## The FUND FOR THE STUDY OF ECONOMIC GROWTH AND TAX REFORM, Appellant,

v.

## INTERNAL REVENUE SERVICE, Appellee.

### No. 98–5105.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 10, 1998.

Decided Dec. 8, 1998.

William J. Lehrfeld argued the cause for appellant. With him on the briefs was Amber Wong Hsu.

Kenneth L. Greene, Attorney, United States Department of Justice, argued the cause for appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General, Wilma A. Lewis, United States Attorney, and Thomas J. Clark, Attorney, U.S. Department of Justice.

Before: WALD and GARLAND, Circuit Judges and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

The Fund for the Study of Economic Growth and Tax Reform ("Fund") appeals the decision of the district court upholding the determination of the Internal Revenue Service ("IRS") that the Fund did not qualify for tax exempt status under 26 U.S.C. § 501(c)(3) ("501(c)(3)"). In order to qualify for tax exempt status under 501(c)(3), an organization must be both organized and operated exclusively for exempt purposes, charitable, educational, scientific, and so forth. An organization is not operated exclusively for exempt purposes if it is an "action" organization, defined in the regulations as an organization which "advocates, or campaigns for, the attainment" of legislation. Treas. Reg. § 1.501(c)(3)–1(c)(3)(iv)(b). The IRS

determined that the Fund was an "action" organization because it advocated on behalf of the repeal of the current tax code and the implementation of legislation embodying its proposals for a flat tax.[1] The district court agreed with the IRS that the Fund was an "action" organization and, hence, was not qualified under 501(c)(3). After careful review of the record, we find that the district court did not err in so doing and we accordingly affirm its decision upholding the IRS's denial of tax exempt status under 501(c)(3).

## I. BACKGROUND

On April 3, 1995, the Republican leadership in Congress, then-Senate Majority Leader, Robert Dole, and then-Speaker of the House of Representatives, Newt Gingrich, announced the formation of the National Commission on Economic Growth and Tax Reform ("Commission") which was charged with the task of designing a "flatter, fairer, and simpler" system of taxation. Joint Appendix ("J.A.") at 91. Dole and Gingrich appointed Jack Kemp as chair of the Commission, who in turn established the Fund, a charitable trust which was intended to be the legal entity providing the financial support (through solicited donations) for the activities of the Commission.

On June 12, 1995, the Fund submitted to the IRS an application for recognition of exemption under 501(c)(3).[2] In its application to the IRS, the Fund stated that it had been established to "fund the study, research and analysis of ideas and proposals to reform the Nation's tax system" and that it would "provide grants to nonpartisan individuals and entities (including educational and scientific institutes) to research and analyze data on whether and to what extent the present tax system burdens economic growth." *Id.* at 42.

From June to September of 1996, the Commission held a series of public hearings around the country on the issue of reforming the present tax system. The Commission also requested responses of the American public through a survey in "Sound Off" in *Money Magazine* which asked people how they would reform the federal income tax system. Finally, on January 17, 1996, the Commission published a report, "Unleashing America's Potential: A Pro–Growth, Pro–Family Tax System for the 21st Century." The Commission issued a press release to correspond with the release of its report, stating that the Commission "today recommended to the U.S. Congress and the President that the current Internal Revenue Code be repealed in its entirety and replaced with a new, simplified, single rate tax system with a generous personal exemption." *Id.* at 202. The report itself also began by stating that the Commission "recommend[ed] to the Congress and to the President of the United States that the current Internal Revenue Code be repealed in its entirety." *Id.* at 354. The report stated that the principles and recommendations contained therein comprised a "Tax Test" and asked "that Congress not pass nor the President sign any tax legislation that fails to pass this test." *Id.*

1. In its initial adverse determination letter, the IRS also indicated that the Fund did not qualify for 501(c)(3) tax exemption because its activities conferred a substantial private benefit on the Republican party and its candidates. *See* Treas. Reg. § 1.501(c)(3)–1(d)(ii) ("An organization is not organized or operated exclusively [for one of the purposes listed in 501(c)(3)] ... unless it serves a public rather than a private interest. Thus, to meet the requirement of this subdivision, it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests...."). The Fund argues that the IRS dropped this private benefit argument in its final determination and, hence, that the private benefit argument should not have been considered by the district court. The IRS argues that it did not drop the private benefit argument and that, even if it did, it was permitted to reintroduce it before the district court.

Given the fact that the IRS and the district court agreed on a separate ground for denial, namely, that the Fund was an "action organization," we find it unnecessary to resolve the parties' dispute with respect to the private benefit aspect. Accordingly, we do not address the issue of whether the private benefit argument was properly before the district court nor do we address the merits of the argument. Instead, we limit ourselves solely to the issue of whether the Fund was an "action organization" and failed on that basis to qualify for 501(c)(3) tax exemption.

2. Tax exempt status under 501(c)(3) is desirable because exempt organizations are not subject to federal income tax under 26 U.S.C. § 501(a) and because contributions to exempt organizations are tax deductible under 26 U.S.C. § 170(c).

The issuance of the report was widely covered by the press. *See id.* at 420–42.

By letter dated August 8, 1996, the IRS communicated its initial adverse determination that the Fund did not qualify for tax-exempt status. First, the IRS determined that because the Fund's primary activity was to provide funding for the Commission, the IRS would treat the Commission's activities as those of the Fund.[3] Next, the IRS found that the evidence indicated that the Commission was an "action" organization. The regulations applicable to 501(c)(3) provide that an organization seeking 501(c)(3) status must be organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals. Treas. Reg. § 1.501(c)(3)–1(d)(1)(i). The regulations provide that an organization is not operated exclusively for exempt purposes if it is an "action" organization. Treas. Reg. § 1.501(c)(3)–1(c)(3)(i). An organization is an "action" organization if it has the following two characteristics: "(a) Its main or primary objective or objectives (as distinguished from its incidental or secondary objectives) may be attained only by legislation or a defeat of proposed legislation; and (b) it advocates, or campaigns for, the attainment of such main or primary objective or objectives as distinguished from engaging in nonpartisan analysis, study, or research, and making the results thereof available to the public." Treas. Reg. § 1.501(c)(3)–1(c)(3)(iv).

The IRS determined that the Commission met both prongs of this "action" organization test because (a) it sought to encourage the implementation of a flat tax, a goal that could only be accomplished by legislation, and (b) it

advocated for this goal. J.A. at 540–43. In finding that the Commission advocated, the IRS looked primarily to the final report issued by the Commission, noting that "[b]ecause the final report is virtually the only product of the Commission, the facts and circumstances that lead us to conclude that its predominate purpose is advocacy are centered in that document." *Id.* at 543. With respect to the report, the IRS concluded that it "read[ ] like a brief or manifesto in support of a particular list of tax law changes"; that it was drafted "to present the most forceful arguments in favor of one point of view"; and that, "as a whole," it was "a document rooted in advocacy. . . ." *Id.* at 542–43. The IRS's initial determination was therefore that the Fund did not qualify for 501(c)(3) tax exemption because it constituted an "action" organization.

The Fund responded to the IRS's initial adverse determination by letter dated October 15, 1996. A conference with IRS officials to discuss the IRS's proposed denial was held on November 8, 1996. On January 27, 1997, the IRS issued a final adverse ruling denying the Fund's application for exemption under 501(c)(3). The Fund responded by filing a complaint in the district court below, seeking a declaratory judgment under 26 U.S.C. § 7428, that it is a tax exempt organization under 501(c)(3).[4] The district court decided the case on cross-motions for summary judgment.

Invoking *de novo* review, the district court sustained the IRS's determination that the Fund did not qualify for tax exemption because it operated as an "action" organization.[5] The Fund conceded that it met the

---

**3.** The district court agreed with the IRS on this point, finding that "due to the fact that the Fund exclusively supported the Commission, the activities of the Commission should be attributed to the Fund." J.A. at 620. The Fund does not contest this finding on appeal; accordingly, we also attribute the activities of the Commission to the Fund for purposes of determining whether the Fund qualifies for 501(c)(3) tax exemption.

**4.** 26 U.S.C. § 7428(a)(2) provides that the United States Tax Court, the United States Claims Court, or the district court of the United States for the District Columbia may make a declaration with respect to the initial or continuing qualification of an organization under 501(c)(3).

**5.** There appears to be confusion about the standard under which lower courts review IRS determinations of tax exemptions under 26 U.S.C. § 7428 in terms of whether there ought be any deference given to the IRS. There are cases holding that the standard of review is *de novo*. *See, e.g., Basic Unit Ministry of Alma Karl Schurig v. United States*, 511 F.Supp. 166, 168 (D.D.C. 1981), *aff'd per curiam*, 670 F.2d 1210 (D.C.Cir. 1982). Other courts have said that the review is not *de novo*, but in the context of discussing the *scope* of review, rather than the *standard* of review. *See, e.g., American Campaign Academy v. Commissioner*, 92 T.C. 1053, 1063, 1989 WL 49678 (1989) ("In making our declaration, we do

first prong of the "action" organization test, that is, that its policies could only be achieved by way of legislation, and the court found that the Fund met the second prong as well, that is, that it advocated for the attainment of the legislation. The court made a number of findings indicating that the Fund advocated. For example, the court found that while the Fund organized public hearings throughout the country, "the record show[ed] that these were conducted to advance a particular political message and to [provide] support for a cornerstone of the Republican agenda in the 1996 elections." *Id.* at 622-A. The court also noted that the speakers at these hearings "clearly enunciated" the message of "mobilizing the majority in Congress (a Republican Congress) to achieve a tax reform...." *Id.* The court also took account of the press releases and newspaper accounts covering the activities of the Commission, noting that the "record [wa]s replete with examples that the Commission advocated a legislative agenda that favored the repeal of the current tax code, and the installation of a 'flat tax,'" and that the "Commission admittedly relied on the press for marketing and advertising of its objectives and disseminating its proposed recommendation." *Id.* The court also emphasized the timing of the entire endeavor, noting that the Commission lasted no more than one year, a year in which the "political environment [was] laden with tax reform issues." *Id.* at 622-A–622-B. Finally, the court noted several statements made by members of the Commission, and related parties, including a statement by Senator Dole and Speaker Gingrich, that the work of the final report "'will surely serve as a catalyst for congressional hearings and debate,'" *id.* at 623, and a statement by the Vice Chairman of the Commission that the final report "'will guide

the debate over tax reform throughout this campaign year.'" *Id.* at 624.

Based on these findings, the district court concluded that the IRS did not err in finding that the Fund was "actively engaged in advocacy," holding that "the evidence on the record supports a finding that the plaintiff is an 'action organization' and is therefore barred from the privilege of tax exemption." *Id.*

## II. DISCUSSION

### A. *Standard of Review*

■ The IRS in its brief and the Fund at oral argument agreed that the standard for our review of the district court's findings is clearly erroneous. The case law on standard of review in the 501(c)(3) context is quite clear: the determination of whether an organization is organized and operated exclusively for exempt purposes is a factual determination reviewed only for clear error. *See, e.g., Nationalist Movement v. Commissioner,* 37 F.3d 216, 219 (5th Cir.1994) ("A finding that a corporation is not operated exclusively for charitable purposes cannot be disturbed unless clearly erroneous."); *Orange County Agric. Society, Inc. v. Commissioner,* 893 F.2d 529, 532 (2d Cir.1990) ("We review the Tax Court decision for clear error. The conclusion that an organization is operated for a substantial non-exempt purpose is a finding of fact entitled to deferential review."); *American Ass'n of Christian Schools v. United States,* 850 F.2d 1510, 1513 (11th Cir.1988) ("The district court's factual finding that the taxpayer is not operated exclusively for religious purposes cannot be disturbed on appeal unless clearly erroneous."); *Church By Mail, Inc. v. Commissioner,* 765 F.2d 1387, 1390 (9th Cir.1985) ("[The] factual finding [that an organization is operated for a substantial non-exempt purpose] [is] reviewa-

not, however, engage in a *de novo* review of the administrative record.... Rather, we 'base [our] determination upon the reasons provided by the Internal Revenue Service in its notice to the party making the request for a determination....'") (quoting H.R.REP. No. 94-658, at 285 (1976), 1976 U.S.Code Cong. & Admin.News 2897, 3181). In the instant case, the question of deference to the IRS proves not to be significant because the district court agreed with the IRS under *de novo* review that the Fund did not

qualify for tax exempt status under 501(c)(3). However, in a case where the district court (or the Tax Court or the Claims Court, as the case may be) disagreed with the IRS on the merits, it would be important for that court to determine what if any deference is due to the IRS's determination. Because we need not decide the question of the trial court's standard of review of IRS determinations in 501(c)(3) cases for purposes of this appeal, we leave the issue open.

ble under the clearly erroneous standard."); *Granzow v. Commissioner,* 739 F.2d 265, 268 (7th Cir.1984) (per curiam) ("The Tax Court's holding ... [that an organization was not entitled to exemption] must be sustained on appeal unless clearly erroneous.").[6]

Moreover, even were we to characterize the district court's determination that the Fund did not operate exclusively for an exempt purpose as a mixed question of law and fact, the Supreme Court has instructed us to review mixed questions of law and fact in tax cases such as these under the clearly erroneous standard. *See Commissioner v. Duberstein,* 363 U.S. 278, 289 n. 11, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *see also Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (listing *Duberstein* as example of where mixed question of law and fact is not reviewed *de novo*).

Accordingly, whether the district court's findings in this case are considered to be findings of fact or mixed findings of fact and law, our review is on a clearly erroneous basis. Here, however, the district court decided the case by way of a grant of summary judgment, thereby presumably viewing its finding that the Fund was an "action" organization as a finding of law, not of fact. Because, as we have pointed out, our review is on a clearly erroneous basis, however, we believe that it would be more appropriate for future district courts to decide 501(c)(3) issues at bench trials, rather than on summary judgment. Nevertheless, although the court below stated that it was deciding the case on

summary judgment, a reading of its decision and the record shows that in fact the court decided the critical issue of whether the Fund was an "action" organization on the merits.[7] Thus, we think that a remand is unnecessary, and we review the case as if it had been properly structured and decided on the merits.

## B. *Review of District Court's Findings*

Given our deferential standard of review, and given the fact that the burden is on the taxpayer seeking exemption to demonstrate that it is in fact entitled to tax-exempt status, *see Granzow v. Commissioner,* 739 F.2d 265, 268 (7th Cir.1984) (per curiam) ("Exemption from income taxation is a matter of legislative grace. A taxpayer requesting an exemption must demonstrate compliance with the specific requirements set forth in the statute granting the exemption.... The party claiming the exemption bears the burden of proof of entitlement"), we have no difficulty in upholding the district court's conclusion that the Fund advocated and hence does not qualify for tax exempt status under 501(c)(3).

The regulations define an "action" organization as one that "advocates, or campaigns for, the attainment of [legislation] ... as distinguished from engaging in nonpartisan analysis, study, or research and making the results thereof available to the public." Treas. Reg. § 1.501(c)(3)–1(c)(3)(iv)(b). While there is no bright line distinguishing an organization which advocates from an or-

---

**6.** This standard of review with respect to the findings of the Tax Court appears to have its origin in the jurisdictional statute providing review of Tax Court decisions. 26 U.S.C. § 7482 provides that courts of appeals are to review Tax Court decisions "in the same manner and to the same extent as decisions of district courts in civil actions tried without a jury." This language mimics that of Rule 52(a)'s clearly erroneous standard and the Supreme Court has interpreted 26 U.S.C. § 7482 as "in the most explicit terms attach[ing] the identical weight [as Rule 52(a)] to the findings of the Tax Court." *Commissioner v. Duberstein,* 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

Of course, our review here is of the district court, not the Tax Court. But the statute granting jurisdiction to the Tax Court, the Court of Claims and the district court for the District of Columbia with respect to 501(c)(3) claims, 26

U.S.C. § 7428, suggests that these three courts are to be treated the same under appellate review: "Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Claims Court, as the case may be, and shall be reviewable as such." 26 U.S.C. § 7428(a)(2). Accordingly, our best reading of 26 U.S.C. § 7482 and 26 U.S.C. § 7428 in combination is that § 7482 instructs us to review the findings of the Tax Court under the clearly erroneous standard and § 7428 instructs us to treat the district court for the District of Columbia as if it were the Tax Court, meaning that its findings must also be reviewed for clear error.

**7.** There were no disputes as to the historical facts underlying the district court's determination.

ganization which engages in nonpartisan analysis, study or research—and we do not attempt to draw one here—we can in this case easily conclude that the district court did not clearly err in finding that the Fund crossed over the line into advocacy.[8] The Commission existed for one year—the year before the 1996 Presidential elections. It studied one issue, an issue that was at the time a very central and controversial political one. With great fanfare, the Commission published a final report wherein it extolled the benefits of the flat tax and "recommend[ed] to the Congress and to the President of the United States that the current Internal Revenue Code be repealed in its entirety." J.A. at 354. Moreover, the district court did not clearly err in concluding that the Commission's activities were not mere "nonpartisan analysis, study, or research and making the results thereof available to the public." Treas. Reg. § 1.501(c)(3)–1(c)(3)(iv)(b). Based on the record before us, the court could reasonably conclude that the Commission had not set out to study tax reform generally and only later concluded that a flat tax was preferable to the present system of taxation.[9] Rather, the indications are that the Commission assumed a conclusion—the preferability of a flat tax—

and then tried to sell this conclusion both to Congress and the President, and to the public more broadly. Of course, the Commission is free to conclude that a flat tax is preferable to the present system of taxation; and it is free to argue this position vigorously to the Congress, to the President and to the American public. However, as the Supreme Court has noted, controversies such as these " 'must be conducted without public subvention; the Treasury stands aside from them.' " *Cammarano v. United States*, 358 U.S. 498, 512, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959) (quoting *Slee v. Commissioner*, 42 F.2d 184, 185 (2d Cir.1930) (L. Hand, J.)). The Fund has failed in this case to meet its burden of demonstrating that it is entitled to tax exemption under 501(c)(3) and the district court did not err in finding that it was not so entitled. Accordingly, the decision of the district court is affirmed.

*So ordered.*

---

**8.** The Fund argues that it does not meet the "action" organization test because it did not actively campaign for its proposed flat tax. However, the second prong of the test asks whether an organization "advocates *or* campaigns" for legislation (emphasis added), indicating that a sustained, grass-roots campaign is not required and that advocacy alone is sufficient.

**9.** We emphasize that our holding in this case is quite narrow. We are not holding that any orga-

nization which studies an issue touching on legislation, reaches a conclusion with respect to that issue, and then argues the merits of that conclusion must necessarily be characterized as an "action" organization. We are simply holding that an organization which assumes a conclusion with respect to a highly public and controversial legislative issue and then goes into the business of selling that conclusion may properly be designated an "action" organization.