**AIRLIE FOUNDATION, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

No. CIV.A.02–0785(EGS).

United States District Court, District of Columbia.

Sept. 24, 2003.

Frank J. Costello, Esquire, Zuckert Scoutt & Rasenberger, LLP, Washington.

Angelo A. Frattarelli, Esquire, United States Department of Justice, Tax Division, Washington.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

**Introduction**

Plaintiff in this case, Airlie Foundation ("Airlie")seeks a declaratory judgment against defendant, the Internal Revenue Service ("IRS") under section 7428 of the Internal Revenue Code of 1986 (26 U.S.C. § 7428) as amended (the "Code" or "IRC"), that it (i)is an organization described in sections 170(c) and 501(c)(3) of the Code; (ii) is not a private foundation pursuant to section 509(a)(2) of the Code; and (iii) is exempt from federal income tax beginning January 1, 1995.

Plaintiff argues that the IRS applied "an unprecedented and poorly reasoned *per se* test" in determining that it did not qualify for tax-exempt status because it did not provide conference services for governmental and charitable patrons at fees "substantially below its costs." Pl.'s Mot. at 2. Plaintiff contends that, had the IRS applied the correct legal standard and considered "all of the relevant facts and circumstances," it "would have been compelled to recognize Airlie as exempt." *Id.*

Defendant maintains that it rightly denied plaintiff's application for recognition as a tax-exempt organization. It argues that, while plaintiff may conduct a limited number of charitable and educational activities, "those ... are incidental to [its] primary activity, which is the operation of a conference center in a manner consistent with that of a commercial business." Def.'s Opp'n and Cross. Mot. ("Def.'s Mot") at 12.

Pending before the Court are plaintiff's and defendant's cross-motions for Summary Judgment.

Facts

Plaintiff is a Virginia non-stock corporation created in 1960 (AR 1, Form 1023, Ex. 1, p. S1) and recognized by the IRS as a tax exempt organization in 1963. It was organized to accomplish the following purposes:

(a) To study, promote, encourage and foster knowledge, understanding and appreciation of (i) the interrelationships which exist in the physical and social sciences, and (ii) the significance of unifying and integrating the knowledge gained about the physical and social sciences, in attaining for the people in the United States richer, happier and fuller lives; and to disseminate knowledge and basic factual material relating to the foregoing so that adults in the United States may healthily exercise their mental faculties, better understand the society in which they live, and live harmoniously in an changing environment [and]

(b) In the field of adult education, to associate together and promote cooperation among administrators, scholars, scientific and professional groups, and others to engage in research, gather basic factual information, and publish and otherwise disseminate in any and all forms the results thereof; to conduct an educational conference center for groups and organizations that have an educational purpose and to hold, initiate, sponsor, aid in managing and directing, and to assist cooperative groups or or-

ganizations in holding, [sic] meetings, assemblies, seminars and conferences of a local, state, or national character; and by these and other means to arrive at and disseminate impartial and authoritative findings on questions of national and international importance, and thus to stimulate the growth of informed opinion with a view to preserving and strengthening the democratic processes and principles of freedom.

Plaintiff carries out its mission principally by organizing, hosting, conducting, and sponsoring educational conferences on its facilities. Pl.'s Proposed Findings of Fact ("PPF") ¶ 4. It has played a role in the development of programs in areas as diverse as civil and human rights, international relations, public policy, the environment, medical education, mental health and disability. *Id.* ¶ 5. Plaintiff sponsors events such as lectures, concerts, and art shows free of charge and provides meeting space for non-profit organizations, overnight accommodations for participants of its cultural programs, and public use of its grounds for large-scale charitable events. *Id.* at ¶¶ 14–16. Besides operating the conference center, plaintiff provides in-kind and administrative support for environmental studies conducted on its facilities by the International Academy for Preventative Medicine, Inc. Plaintiff receives a monthly fee of $12,500 for its services. Defs.' Statement of Facts ("SOF") ¶ 13.

On average, plaintiff hosts about 600 groups per year. It derives approximately 85 percent of its operating revenue from fees paid by these clients and approximately eight percent from its endowment. Pl.'s PFF ¶ 16. An average of 20 percent of Airlie's conference events are for government clients, 50 percent from nonprofit and/or educational clients, and 30–40 percent for "other" users.[1] Pl.'s PFF ¶ 17; Def.'s SOF ¶ 17. At most, ten percent of plaintiff's clients use its facility for private events and another ten percent at most represent private commercial clients pursuing their private interests. Pl.'s PFF ¶ 17.

Plaintiff maintains that "[t]he decision to serve principally the governmental and nonprofit sector rather than the commercial for–profit sector reflects a deliberate choice by the Foundation's Board at its creation as the most effective way to accomplish its educational and charitable purposes." *Id.* ¶ 24. According to industry data from 1999, plaintiff's average daily rate was almost twenty percent lower than the average rates for nearby conference centers. *Id.* ¶ 25. The expected operating pre-tax profit margin for a commercial conference center should be approximately twenty percent of gross revenues. Plaintiff's actual operations during the years 1995–1998 reflected a pre-tax profit margin of barely four percent after excluding grants, investment income and unusual items. "In other words, the Foundation uses the investment income from its endowment to subsidize its conference and its other public benefit activities." *Id.* ¶ 27.

In response to an inquiry by IRS, plaintiff provided a daily list of all patrons that used its facilities during 1999. The data revealed that, of the 651 events in 1999, plaintiff fully subsidized 4.75 percent and partially subsidized another 12.5 percent. Pl.'s PFF. ¶ 29. Subsidies varied depending on the patrons, but included discounts of ten percent, nearly 50 percent and 80 percent. *Id.* ¶ 30.

---

1. While plaintiff maintains that the figure is thirty percent, defendant contends it is closer to 40 percent.

Plaintiff has traditionally operated on a break-even basis. While it did earn net income and pay more than $1.3 million in federal and state income taxes, its investment income during those years exceeded its four-year net excess of revenues over expenses. *Id.* ¶ 32.

In the late 1970s, the IRS commenced an investigation of Airlie. The agency's main concern surrounded the nature and extent of financial benefits flowing from plaintiff to its founder, the late Murdoch Head. The IRS also looked into plaintiff's conference activities. On November 3, 1988, the IRS revoked its recognition of plaintiff's tax-exempt status under section 501(c)(93), retroactive to January 1, 1976. The agency's stated grounds for removal were (i) that plaintiff's earnings inured to the benefit of its founder, Murdoch Head, and to his family; and (ii)that plaintiff operated its conference center activity for a non-exempt, commercial purpose. In 1993, this Court denied plaintiff's challenge to that determination. *See Airlie Found. v. United States*, 826 F.Supp. 537 (D.D.C. 1993). In its opinion, the district court explicitly stated that "it is not necessary to address the IRS' determination that [Airlie] was operating its conference center as a commercial enterprise." *Id.* at 539 n. 2. The D.C. Circuit affirmed in a *per curiam* decision. *Airlie Found. v. United States*, 55 F.3d 684, 1995 WL 310025 (D.C.Cir. 1995). Pl.'s PFF. ¶¶ 50–52.

On February 3, 1998, having decided to make an effort to regain its exempt status, plaintiff participated in a "pre-filing" conference with IRS representatives. At that conference, the agency identified three potential issues that could be raised by a new Airlie exemption application: (i) whether there were improper financial benefits to Airlie insiders or other private interests; (ii) whether Airlie's relationship with the Head family was appropriate; and (iii)

whether Airlie's conference-related activities were undertaken for commercial purposes. *Id.* ¶ 53.

On August 6, 1999, plaintiff applied to the IRS for recognition as a Section 501(c)(3) tax-exempt entity. The IRS denied plaintiff's application on January 24, 2002, finding that plaintiff operated its conference center for a commercial purpose. Def.'s SOF ¶ 4.

Discussion

*Standard of Review*

Summary judgment should be granted only if the moving party has shown that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879 (D.C.Cir.), *reh'g en banc granted*, 124 F.3d 1302 (1997). Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir.1975).

As noted above, plaintiff brings the current action pursuant to Code section 7428, which "confers concurrent jurisdiction to the Court of Federal Claims, the United States Tax Court and the District Court to review a final determination by the Secretary of the Treasury regarding the tax exempt status of an organization under § 501(c)(3)." *Fund for the Study of Economic Growth and Tax Reform v. Internal Revenue. Service*, 997 F.Supp. 15, 18 (D.D.C.1998), *aff'd*, 161 F.3d 755 (D.C.Cir. 1998). The standard of review in such cases is *de novo* and the scope of review is limited to the administrative record in the absence of a showing of good cause. *Id.* (citing *Basic Unit Ministry of Alma Karl*

*Schurig v. United States*, 511 F.Supp. 166, 167–168 (D.D.C.1981), *aff'd* 670 F.2d 1210 (D.C.Cir.1982)). "The Court, however, may make findings of fact which differ from the administrative record." *Fund for the Study of Economic Growth and Tax Reform v. Internal Revenue. Service*, 997 F.Supp. 15, 18 (quoting *Airlie Found., Inc. v. United States*, 826 F.Supp. 537, 547 (D.D.C.1993)).[2] Courts reviewing a final determination of tax exempt status by the IRS must consider "the overall picture presented by the administrative record." *Id.* (citing *Dumaine Farms v. Comm'r*, 73 T.C. 650, 1980 WL 4510 (1980)).

In reviewing a Section 7428 action for summary judgment purposes, the court's focus should be on whether the agency's determination "was proper in light of the law and facts in the record." *Houston Lawyer Referral Service v. Commissioner of Internal Revenue*, 69 T.C. 570, 1978 WL 3279 (1978). The taxpayer, in this case plaintiff, maintains the burden of proof and, consequently, must show both that it is entitled to the tax-exempt status and that the IRS' determination was incorrect. *Airlie*, 826 F.Supp. at 547. "Thus, while the court must review the IRS' determination *de novo*, the organization still carries the burden of demonstrating that it has met the requirement of the statute under which it claims tax exemption." *Church of the Visible Intelligence that Governs the Universe v. United States*, 4 Cl.Ct. 55, 60 (1983).

*Exempt Organizations Under IRC Section 501(c)(3)*

■ Pursuant to Section 501(c)(3), an organization is entitled to federal corporate income tax exemption if the following requirements are met[3]:

(1) the organization is organized and operated exclusively for exempt purposes (i.e., religious, charitable, educational purposes); and

(2) no part of the organization's net earnings benefits any private shareholder or individual; and

(3) no substantial part of the organization's activities consists of carrying on propaganda, or otherwise attempting to influence legislation; and

(4) the organization must not participate in any political campaigns.

26 U.S.C. § 501(c)(3).

*Plaintiff's Status*

■ As defendant concedes that plaintiff was organized for an exempt purpose, only the operational test is at issue in this case. Def.'s Mot. at 5. The operational test requires both that an organization engage "primarily" in activities that accomplish its exempt purpose and that not more than an "insubstantial part of its activities" further a non-exempt purpose. Pl.'s Mot. at 8–9 (citing Treas. Reg. (26 C.F.R.) § 1.501(c)(3)–1(c)(1)). Though an incidental non-exempt purpose will not automatically disqualify an organization, the "presence of a single [nonexempt] purpose, if substantial in nature, will destroy the exemption, regardless of the number or importance of truly [exempt] purposes." *Better Business Bureau of Washington, D.C. v. United States*, 326 U.S. 279, 283, 66

---

**2.** Either party may introduce evidence outside of the administrative record and the court may, "upon the basis of evidence presented," make findings of fact which differ from those in the administrative record. Rule 217(b), Tax Rules of Practice & Procedure, cited in *Airlie*, 826 F.Supp. at 548.

**3.** An organization that otherwise meets the statutory requirements will nevertheless fail to qualify for tax-exempt status if its exemption-related activities violate public policy. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157

S.Ct. 112, 90 L.Ed. 67 (1945); *Airlie*, 826 F.Supp. at 549. In cases where an organization's activities could be carried out for either exempt or nonexempt purposes, courts must examine the *manner* in which those activities are carried out in order to determine their true purpose. *See, e.g., Living Faith, Inc. v. Comm'r*, 70 T.C. 352, 356–57 (1978).

■ In applying the operational test, courts have relied on what has come to be termed the "commerciality" doctrine. Pl.'s Mot. at 10. In many instances, courts have found that, due to the "commercial" manner in which an organization conducts its activities, that organization is operated for nonexempt commercial purposes rather than for exempt purposes. Among the major factors courts have considered in assessing commerciality are competition with for profit commercial entities;[4] extent and degree of below cost services provided; pricing policies; and reasonableness of financial reserves.[5] Additional factors include, *inter alia*, whether the organization uses commercial promotional methods (e.g., advertising) and the extent to which the organization receives charitable donations.

Plaintiff contends that, considering the various "commercialism" factors that courts have identified in conjunction with an "overall facts and circumstances" test,[6] its "present conference activities are undertaken principally to advance the educational and charitable purposes for which Airlie was organized . . . ." Pl.'s Mot. at 15. Plaintiff submits that its conference activities differ substantially from those of commercial, taxable conference centers in the following respects:

● Airlie's conference fees are comparable to, and in some respects lower than, those of other nonprofit conference centers and substantially lower than those of commercial conference centers.

● Airlie engages in very little advertising. Its limited promotional activities via the web are less commercial even than those of other nonprofit conference centers that are tax-exempt.

---

**4.** *See American Inst. for Economic Research v. United States*, 157 Ct.Cl. 548, 302 F.2d 934, 938 (Cl.Ct.1962), *cert denied*, 372 U.S. 976, 83 S.Ct. 1109, 10 L.Ed.2d 141 (1963); *Easter House v. United States*, 12 Cl. Ct 476, 486 (1987), *aff'd*, 846 F.2d 78 (Fed.Cir.), *cert denied*, 488 U.S. 907, 109 S.Ct. 257, 102 L.Ed.2d 246 (1988) ("Plaintiff's competition [with other commercial organizations] provides its activities with a commercial hue."); *BSW Group, Inc. v. Comm'r*, 70 T.C. 352, 358, 1978 WL 3344 (1978) ("Competition with commercial firms is strong evidence of the predominance of nonexempt commercial purposes.").

**5.** *See, e.g., BSW Group*, 70 T.C. at 360; *Easter House*, 12 Cl.Ct. at 485–86.

**6.** As plaintiff notes, at one time the IRS' evaluation of hospitals included a *per se* rule. In order to qualify for an exemption, a nonprofit hospital had to provide a minimal level of "charity care," or medical services for indigent patients without payment or for charges below the cost of providing services. Rev. Rul. 56–185, 1956–1 C.B. 202. In Rev. Rul. 69–545, 1969–2 C.B. 117, the IRS announced what, through subsequent pronouncements and cases, has become known as the "community benefit" standard, an inquiry focused on overall facts and circumstances that looks at the myriad ways in which a non-profit hospital's fee-for-service operations and associated activities can confer a community benefit sufficient to distinguish it from taxable entities and to warrant a tax exemption. Pl.'s Mot. at 13 n. 34 (citing Rev. Rul. 83–157, 1983–2 C.B. 94; *Geisinger Health Plan v. Comm'r*, T.C. Memo.1991–649, 1991 WL 276054 (1991), *rev'd & remanded*, 985 F.2d 1210 (3rd Cir.1993), *on remand* 100 T.C. 394, 1993 WL 137137 (1993), *aff'd* 30 F.3d 494 (3rd Cir.1994); *Sound Health Ass'n v. Comm'r*, 71 T.C. 158, 1978 WL 3393 (1978), *acq.* 1981 WL 383642, 1981–2 C.B. 2 (1981).)

• Airlie has not accumulated its reserves unreasonably. "To the contrary, Airlie's management has acted prudently to maximize Airlie's educational and charitable activities in light of the serious financial limitations in light of the serious financial limitations presented by its largely break-even operations since revocation of exemption, its inability to solicit tax-deductible contributions, its reliance on its investment income to subsidize conference activities, its plans to acquire substantial additional property for its environmental preserve, and the depletion of its endowment to fund its 1998 real estate purchase." Pl.'s Mot. at 25.

According to defendant, the administrative record clearly demonstrates that the "commercial hue" of plaintiff's conference center activities disqualifies it as a tax exempt organization pursuant to Section 501(c)(3). The IRS asserts that "there is little dispute that the lectures, concerts, art shows and other activities sponsored by plaintiff are merely incidental in comparison to that activity." Def.'s Mot. at 7–8. Defendant relies heavily on a 1997 appraisal of plaintiff's facilities, which found that:

> The Airlie Center primarily competes with conference centers located in the Washington, D.C. area. In addition, the subject competes to some extent with upscale specialty inns such as the Inn at Perry Cabin.
>
>      \*     \*     \*     \*     \*     \*
>
> The Airlie Center also derives substantial income from weddings and special events. The competitive conference centers typically derive a much smaller percentage of their income from these services. The subject primarily competes

with local motels and fellowship halls in Fauquier County.

AR 1, Form 1023, Exhibit 1.3 at 38, 40.

As it is clear from the facts that plaintiff engages in conduct of both a commercial and exempt nature, the question whether it is entitled to tax-exempt status turns largely on whether its activities are conducted *primarily* for a commercial or for an exempt purpose. Parties are correct in asserting that *BSW Group, Inc. v. Comm'r*, 70 T.C. 352, 358, 1978 WL 3344 (1978), provides the most relevant case authority.

*BSW Group* involved the operation of a business purportedly formed for the purpose of providing consulting services primarily in the fields of rural-related policy and program development. Petitioner's consulting clients were to be tax-exempt organizations and not-for-profit organizations who were to become aware of petitioner's services through word of mouth rather than traditional advertisement. *BSW Group*, 70 T.C. at 354–55. Petitioner's general policy was to provide its consulting services at or close to cost, but fees were to be sufficiently high as to enable petitioner to retain at least a nominal administrative fee over and above the amount payable to individual consultants. *Id.* at 355. In concluding, "with reluctance," *id.* at 360, that BSW Group was not an exempt organization, the Tax Court focused on the fact that the organization's "overall fee policy [was] . . . to recoup its costs and . . . realize some profit," that the organization competed with commercial firms, that it had not received or solicited voluntary contributions, and that it had failed to limit its clientele to organizations which were themselves exempt under Section 501(c)(3). Notably, while petitioner's fee structure in that case reflected ability to pay, it did not appear that the organiza-

tion planned ever to charge a fee less than cost. *Id.* at 358–60.

In the present case, plaintiff admits that its primary activity is the operation of a conference center. Like petitioner in *BSW Group,* plaintiff acts as an intermediary and does not directly benefit the public. As was the case in *BSW Group,* plaintiff's conference patrons are not limited to tax-exempt entities. According to the booking report for 1999, the year in which plaintiff applied to the IRS for tax exempt status, in fact, approximately 30–40 percent of plaintiff's patrons were of a private or corporate nature. While plaintiff in the instant case has made profits ranging from an average of four percent up to ten percent, unlike petitioner in *BSW Group,* it provided more than 17 percent of its 1999 conferences for fees covering less than total costs. As the Tax Court correctly stated in the case of *IHC Health Plans, Inc. v. Comm'r,* 325 F.3d 1188 (10th Cir.2003), cited by defendant, "there is a qualitative difference between selling at a discount and selling below cost." *IHC,* 325 F.3d at 1200. The fact that plaintiff's conference center derives substantial income from weddings and special events and competes with a number of commercial, as well as non commercial, entities constitutes strong evidence, pursuant to *BSW Group,* of a commercial nature and purpose. Furthermore, though plaintiff contends that most of its bookings are the result of word-of-mouth referrals, it maintains a commercial website and has paid significant advertising and promotional expenses.[7]

■ While plaintiff was organized for an exempt purpose, the Court cannot find, under the totality of the circum-

stances, that it is operated similarly. Having considered the facts before it, the Court is not persuaded that plaintiff has met its burden of demonstrating that an incorrect determination was made by the Internal Revenue Service. While certain factors-including plaintiff's fee structure and subsidization practice-are indicative of non-commercial characteristics, others-such as the nature of its clients and competition, its advertising expenditures and the substantial revenues derived from weddings and special events on the premises, strongly suggest that the agency was correct in revoking the foundation's tax exempt status. The final determination letter underscores the IRS' proper understanding and application of the "operations test":

> You have failed to establish that you are operated exclusively for charitable or educational purposes within the meaning of section 501(c)(3) of the Code. You are not exempt because you are operated in a manner not significantly distinguishable from a commercial endeavor. By operating in the manner described, you are furthering a substantial nonexempt purpose.

The IRS' conclusion is fully supported by the totality of circumstances as set forth in the administrative record. While plaintiff's organizational purpose is exempt and the foundation operates, in important respects, in an exempt fashion, there is a distinctive "commercial hue" to the way Airlie carries out its business.

Conclusion

For the reasons outlined herein, the Court finds that defendant IRS is entitled

---

7. Between 1995 and 1998, plaintiff paid an amount in excess of $270,000 in advertising and promotional expenses. Notably, the plaintiff in *Living Faith, Inc. v. Comm'r,* 950 F.2d 365 (7th Cir.1991), paid $15,500 over a two-year period, a fact which the court considered in concluding that the organization engaged in activities that furthered a nonexempt purpose.

to summary judgment against plaintiff Airlie. Because plaintiff operates its conference center in a manner consistent with that of a commercial business, it does not meet the requirements of Code Section 501(c)(3) and is therefore not entitled to tax-exempt status. Defendant was correct in denying plaintiff's application for recognition as a Section 501(c)(3) entity. Though plaintiff carries out a number of charitable and educational activities, these are incidental to its primary activity of operating center.

An appropriate order accompanies this memorandum opinion.

### ORDER AND JUDGMENT

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the Court in its Memorandum Opinion docketed this same day, it is by the Court hereby

ORDERED that plaintiff's motion for summary judgment is denied; and it is

FURTHER ORDERED that defendant's cross-motion for summary judgment is granted; and it is

FURTHER ORDERED and ADJUDGED that the Clerk shall enter final judgment in favor of defendant and against plaintiff, which judgment shall declare that plaintiff is not entitled to tax-exempt status pursuant to 26 U.S.C. § 501(c)(3).