# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 15, 2013          Decided June 28, 2013

No. 12-5360

FAMILY TRUST OF MASSACHUSETTS, INC.,
APPELLANT

v.

UNITED STATES OF AMERICA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00680)

*Christopher S. Rizek* argued the cause for the appellant. *Matthew C. Hicks* was on brief.

*Jennifer M. Rubin*, Attorney, United States Department of Justice, argued the cause for the appellee. *Ronald C. Machen Jr.*, United States Attorney, and *Kenneth L. Greene*, Attorney, were on brief.

Before: HENDERSON, TATEL and GRIFFITH, *Circuit Judges*.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Family Trust of Massachusetts, Inc. (FTM) manages a pooled trust established pursuant to 42 U.S.C. § 1396p(d) to provide supplemental services and benefits to disabled individuals receiving Medicaid, Supplemental Security Income (SSI) or other public benefits. FTM applied to the United States Internal

Revenue Service (IRS) for a charitable tax exemption under I.R.C. § 501(a) and (c)(3) based on its trustee services. After the IRS preliminarily denied FTM's application, FTM filed this action seeking a declaration that it is a tax exempt charitable organization. The district court granted summary judgment to the government, concluding that FTM failed to satisfy two of the statutory requirements to constitute a charitable organization: (1) that it be "operated exclusively for . . . charitable . . . purposes" and (2) that "no part of [its] net earnings . . . inure[] to the benefit of any private shareholder or individual." I.R.C. § 501(c)(3); *see Family Trust of Mass., Inc. v. United States*, 892 F. Supp. 2d 149 (D.D.C. 2012). We agree with the district court that FTM is not operated exclusively for charitable purposes and, accordingly, affirm the grant of summary judgment on that ground.

## I.

Eligibility for some government benefit programs, including Medicaid and SSI, is limited by a claimant's income and assets, which affect whether and to what extent the claimant may receive benefits. *See Sai Kwan Wong v. Doar*, 571 F.3d 247, 251 (2d Cir. 2009); *Lewis v. Alexander*, 685 F.3d 325, 333 (3d Cir. 2012). Under statutory "trust-counting" rules, a trust corpus generally is counted as an asset for the purpose of the eligibility limits. *Lewis*, 685 F.3d at 333 (citing Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103–66, Title XIII § 13611(d)(1)(C), 107 Stat. 312 (codified at 42 U.S.C. § 1396p(d)(1)(C)). The Congress made an exception, however, for a qualifying "special needs" or "supplemental needs" trust—that is, " 'a discretionary trust established for the benefit of a person with a severe and chronic or persistent disability and [] intended to provide for expenses that assistance programs

such as Medicaid do not cover.' "[1]   *Id.* (quoting *Sullivan v. Cnty. of Suffolk*, 174 F.3d 282, 284 (2d Cir. 1999)); *see* 42 U.S.C. § 1396p(d)(4).  One form of such a trust is the "pooled" special needs trust, which " 'is a special arrangement with a non-profit organization that serves as trustee to manage assets belonging to many disabled individuals, with investments being pooled, but with separate trust "accounts" being maintained for each disabled individual.' "  *Id.* (quoting Jan P. Myskowski, *Special Needs Trusts in the Era of the Uniform Trust Code*, 46 N.H. Bar J., Spring 2005, at 16); *see* 42 U.S.C. §1396p(d)(4)(C)(iii).[2]  FTM was organized in March 2003, inter alia, to manage such pooled account trusts.  *See* Articles of Organization, Family Trust of Mass., art. II (filed July 31, 2002) (JA 256).   FTM's Articles of Organization identify four individuals as directors, including Peter M. Macy.  Macy is also identified as President and Treasurer and his law office address is listed as FTM's "principal office." *Id.* art. VII (JA 259).

In March 2004, FTM executed a trust agreement establishing the "Family Trust for Supplemental Needs II" (Trust)—with FTM as its trustee—"to provide for the collective management and distribution of the Trust Estate on behalf of persons who are disabled, as defined in 42 U.S.C. §1382c(a)(3), for whom trust accounts are established."  Trust Agreement, Family Trust for Supplemental Needs II § 2.020  (Mar. 23, 2004) (JA 116) (Trust Agreement).  The Trust Agreement sets the minimum contribution level for a trust account at $25,000, payable over three years, and provides that, upon the death of a

---

[1]Expenses the trust account covers include "books, television, Internet, travel, and even such necessities as clothing and toiletries." *Lewis*, 685 F.3d at 333.

[2]Each pooled account must have been  established solely for the benefit of a disabled individual by himself, his parent, grandparent or legal guardian or a court.  42 U.S.C. § 1396p(d)(4)(C).

beneficiary, the Trust retains a portion of the residual corpus equal to $1,000 plus five to twenty per cent of the remaining funds, depending on the length of the account's life. Each account is assessed a minimum annual trustee fee of $750. The number of pooled trust accounts grew from about 20 in 2005 to 300 by 2010, largely through referrals from "elder law" professionals, including Macy himself. *See* Letter from FTM to IRS at 4 (Mar. 2, 2009) (JA 456) ("Macy refers his own disabled clients to the pooled trust if they meet the criteria of FTM's charitable class."); Mem. from FTM to IRS ¶ 3 (Dec. 26, 2006) (JA 313) ("Information about the benefits of or through [FTM] is disseminated primarily through word-of-mouth in the Elder Law legal community, but it also is presented in various treatises and other source books for Medicaid law in Massachusetts.").

In November 2005, FTM applied to the IRS for a tax exemption as a "charitable" organization under I.R.C. § 501(a) and (c)(3).[3] There followed substantial correspondence between FTM and the IRS. On February 12, 2008, the IRS sent FTM a proposed denial of the application, stating that FTM's trust management services lacked the "donative element necessary" to establish a charitable purpose. Letter from IRS to FTM at 6-7 (Feb. 12, 2008) (JA 400-01) (Proposed Exemption Denial). The IRS explained:

> You state that you charge the Trust fees that are reasonable, consistent with the laws of Massachusetts. Thus, you have not established that the services you provide to the Trust are charitable within the meaning of section 501(c)(3).

---

[3]Section 501(a) exempts from taxation "[a]n organization described in subsection (c)," which includes "[c]orporations . . . organized and operated exclusively for . . . charitable . . . purposes, . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual." I.R.C. § 501(a), (c)(3).

> In addition, although you state that the fees you charge the Trust are below commercial trustee rates for administration of trusts of the size and nature of the assets you manage, you have not established that these fees are substantially below your cost . . . . Therefore, your services to the Trust are not charitable within the meaning of section 501(c)(3) of the Code.

*Id*. at 7 (JA 401). The IRS also reasoned that FTM is not "operated exclusively for the relief of the poor and distressed" because it is the Trust—for which FTM provides "trustee services and trust management and investment services"—that provides such relief. *Id*.

Additional correspondence followed, culminating in an August 3, 2010 conference, after which the IRS sought additional information, including tax returns for "tax years 2007 to the present." Letter from IRS to FTM at 3 (Aug. 18, 2010) (JA 519). FTM responded with copies of its 2007 and 2008 returns, advising that its 2009 return would "be filed by October 15, 2010." Letter from FTM to IRS at 11 (Oct. 8, 2010) (JA 554). FTM filed the 2009 return with the IRS on November 11, 2010.

On April 6, 2011, FTM filed a complaint in district court, pursuant to I.R.C. § 7428(a),[4] seeking a declaration that FTM "is exempt from federal income taxation under Section 501(a) of the Internal Revenue Code as an organization described in Section 50l(c)(3) of the Internal Revenue Code." Compl. at 3, *FTM v. United States*, C.A. No. 11–680 (D.D.C. Apr. 6, 2011) (JA 9). The government moved to supplement the stipulated

---

[4]Section 7428 allows an organization that requests a section 501(c)(3) exemption but does not receive a final determination of exemption eligibility within 270 days to seek a declaration of exemption from the United States Tax Court, Court of Federal Claims or District Court for the District of Columbia. I.R.C. § 7428(a), (b).

administrative record with FTM's 2003 and 2009 tax returns,[5] which motion FTM opposed. The district court granted the motion, concluding that the tax returns were "pertinent returns" within the meaning of Tax Court Rule 210(b)(12) (" 'Administrative record' includes, where applicable, . . . all pertinent returns . . . ."). *Family Trust of Mass., Inc. v. United States*, 2012 WL 3194421 (D.D.C. June 7, 2012). In September 2012, on cross-motions for summary judgment on the merits, the district court granted summary judgment in the government's favor. *Family Trust of Mass.*, 892 F. Supp. 2d at 161. FTM timely appealed.

## II.

The district court granted summary judgment on the alternative grounds that FTM failed to meet two requirements for a section 501(c)(3) exemption: (1) "that it is operated solely for exempt purposes" and (2) "that its net earnings do not provide a private benefit to any individual." *Family Trust of Mass.*, 892 F. Supp. 2d at 161. "[T]he determination of whether an organization is organized and operated exclusively for exempt purposes is a factual determination reviewed only for clear error." *Fund for the Study of Econ. Growth & Tax Reform v. IRS*, 161 F.3d 755, 758 (D.C. Cir. 1998); *see also ASA Investerings P'ship v. Comm'r*, 201 F.3d 505, 511 (D.C. Cir. 2003) ("[I]n tax cases mixed questions of law and fact are to be treated like questions of fact" (citing *Fund*, 161 F.3d at 759)).

---

[5]The IRS sought to include the 2003 and 2009 returns in order to emphasize the substantial increase in FTM's "profitability" from 2003—its first year of operation when it had no revenue or expenses—to 2009, its most recently documented tax year when it had revenues of $667,679 and expenses of $305,155. *See* U.S. Separate Filing re: Admin. R. and/or Mot. to Supplement Agreed Admin. R., *FTM v. United States*, C.A. No. 11–680, at 3-4 (Sept. 21, 2011) (JA 64-65); *id*. Ex. A, at 1 (JA 68).

Because the district court did not clearly err in determining that FTM is not operated exclusively for a charitable purpose, we affirm the district court on the first ground without reaching the second.[6]

To qualify for the section 501(c)(3) charitable exemption, FTM must, inter alia, be "operated exclusively for . . . charitable . . . purposes." I.R.C. § 501(c)(3). *See IHC Health Plans, Inc. v. Comm'r*, 325 F.3d 1188, 1194 (10th Cir. 2003) ("Under section 501(c)(3), an organization must meet three requirements to qualify for tax exemption: (1) the corporation must be organized and operated exclusively for exempt purposes; (2) no part of the corporation's net earnings may inure to the benefit of any shareholder or individual; and (3) the corporation must not engage in political campaigns or, to a substantial extent, in lobbying activities.") (footnote and quotation marks omitted); *accord Church of the Visible Intelligence that Governs the Universe v. United States*, 4 Cl. Ct. 55, 61 (1983). Under the IRS's test, "[a]n organization will be regarded as operated exclusively for one or more exempt purposes only if it *engages primarily* in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3)"; conversely, "[a]n organization will *not* be so regarded if *more than an insubstantial part of its activities* is not in furtherance of an exempt purpose." 26 C.F.R. § 1.501(c)(3)-1(c)(1) (emphases added). The administrative record establishes that "more than an insubstantial part" of FTM's activities has been in furtherance of a commercial rather than a charitable purpose.

In determining whether an organization "operates for a substantial commercial purpose" we consider "various objective

---

[6]Moreover, the parties agree regarding the operational purpose prong that we need not decide who bore the burden of proof in district court. *See* Appellee's Br. 64; Tr. of Oral Argument at 26 (May 15, 2013).

indicia[, e.g., t]he particular manner in which an organization's activities are conducted, the commercial hue of those activities, competition with commercial firms, and the existence and amount of annual or accumulated profits." *Living Faith, Inc. v. Comm'r*, 950 F.2d 365, 372 (7th Cir. 1991). The objective indicia here point to a commercial purpose underlying FTM's activities which are, as the district court described them, "shrouded with a 'commercial hue.' " 892 F. Supp. 2d at 159; *cf. Better Bus. Bureau of Wash., D.C. v. United States*, 326 U.S. 279, 283-84, (1945) ("commercial hue permeating . . . organization" disqualified organization from "exclusively for . . . educational purposes" exemption from social security tax).

To all appearances, FTM operates as a commercial, for-profit trustee. It charges fees to establish and manage the pooled trusts and retains residual funds—the "residuals"—from the accounts of deceased beneficiaries. As the following data show, FTM's operations have consistently produced revenue in excess of expense:

| Tax Year | Revenue | Expenses |
|---|---|---|
| 2003 | $ 0 | $ 0 |
| 2004 | $ 5,825 | $ 628 |
| 2005 | $ 53,125 | $ 34,054 |
| 2006 | $ 54,790 | $ 53,927 |
| 2007 | $194,235 | $ 95,443 |
| 2008 | $303,083 | $182,230 |
| 2009 | $667,679 | $305,155 |

Pl.'s Reply Mem. in Supp. of its Cross-Mot. for Summ. J. at 8, *FTM v. United States*, C.A. No. 11–680 (D.D.C. Dec. 21, 2011) (JA 993); Ex. A , U.S. Separate Filing re: Admin. R. and/or Mot. to Supplement Agreed Admin. R., *FTM v. United States*, C.A. No. 11–680, at 1 (D.D.C. Sept. 21, 2011) (JA 68); *id*. Ex. B, at

1, 10 (JA 71, 79).[7] Notwithstanding FTM's profitability, its operations manifest no countervailing "donative element" to mark them as charitable. There is no evidence that the fees FTM charges are below market rate, much less below cost—at least if the residuals are taken into account. Moreover, FTM dismissed as "not appropriate for trust administration" the solicitation of charitable donations to defray trust costs. Letter from FTM to IRS at 11 (Oct. 8, 2010) (JA 554); *see Living Faith, Inc.,* 950 F.2d at 373-74 ("lack of below-cost pricing militates against granting an exemption," while "lack of plans to solicit contributions" is "relevant factor" in determining commercial nature vel non) (citing *Fed'n Pharmacy Servs., Inc. v. Comm'r*, 625 F.2d 804, 807 (6th Cir. 1980)); *B.S.W. Grp., Inc. v. Comm'r*, 70 T.C. 352, 356 (1978) (furnishing services even "at cost lacks the donative element necessary to establish . . . activity as charitable"); *id.* at 359 (noting among "factors

---

[7]FTM opposes consideration of its 2009 return, asserting the district court erred in including it in the Administrative Record "[d]espite the complete absence of the[] return[] at the administrative level." Appellant's Br. 27. In November 2010 (when FTM filed the return), however, the parties were still at "the administrative level"—the IRS had not filed a final determination (and in fact never did so) and this action was not filed in district court until April 6, 2011—some six months thence. *See Family Trust of Mass.*, 2012 WL 3194421, at 5*. Moreover, FTM acquiesced in the IRS's request for the returns and, in any event, cannot claim unfair surprise at the contents. Under the circumstances, the district court did not abuse its discretion in including the 2009 return in the administrative record as a "pertinent return[]" under Tax Court Rule 210(b)(12). *See Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 211 (D.C. Cir. 2011) (district court did not abuse discretion in supplementing administrative record with comment letter agency "accepted . . . without objection" notwithstanding party failed to comply with requirement that commenter planning hand-delivery of comments telephone agency to schedule same).

weigh[ing] against" charitable tax exemption that petitioner "ha[d] not solicited, nor ha[d] it received, voluntary contributions from the public" and its income came from "fees for services . . . set high enough to recoup all projected costs . . . and indeed, to produce a net profit"). Nor has FTM used its burgeoning residuals revenue to offset or waive trust management fees. Reply Br. 23; *cf. Lewis*, 685 F.3d at 348-49 ("Retaining the residual enables the trust to cover administrative fees and other overhead without increasing charges on accounts of living beneficiaries.").[8]

The charitable purpose of FTM's operations is further undercut by the commercial trappings of its operations. The interrelationship between FTM and Macy's law firm—FTM's headquarters are in Macy's law offices, he refers clients to FTM and he has performed legal services for it as well—cast FTM's operations as a commercial offshoot of Macy's elder law practice. Moreover, FTM has actively marketed its services through "word-of-mouth in the Elder Law legal community," Mem. from FTM to IRS ¶ 3 (Dec. 26, 2006) (JA 313)—Macy's professional milieu—where it is likely to find affluent and disabled elder law clients eager to obtain FTM's services and able to afford the minimum $25,000 deposit and $750 annual fee. *See* http://www.familytrustofmass.org/ right_for_you.html (promoting "Family Trust" as "right for you . . . if you . . . [a]re an Elder Law attorney or financial professional assisting clients

---

[8]Regarding retained residuals, FTM asserted to the IRS that "all such amounts received since the inception of FTM in fact have been earmarked for FTM's charitable guardianship program." Letter from FTM to IRS at 11 (Mar. 12, 2008) (JA 415). No guardianship program has been established. *See* Tr. of Oral Argument at 6 (May 15, 2013); *see also* Proposed Exemption Denial at 7 (JA 401) ("Whether the guardianship services you expect to perform in the future will constitute a charitable activity remains to be seen. At the present time, these services are remote and speculative.").

to preserve assets against the cost of long-term care through estate planning") (JA 522);  *Living Faith Inc.*, 950 F.2d at 373 (noting "use of promotional materials and commercial catch phrases to enhance sales are relevant factors in determining whether an organization operate[s] in the same manner as that of any profitable commercial enterprise" and concluding materials promoting organization's restaurants, bible classes and cooking classes had "strong commercial hue, and thus provide[d] an indicia of a forbidden commercial purpose") (brackets in original; quotation marks omitted).   FTM's marketing practices highlight its already-pervasive commercial hue.

For the foregoing reasons, we conclude FTM is not operated exclusively for a charitable purpose and accordingly affirm the district court's grant of summary judgment to the government.

*So ordered.*