**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3439
_____

ZACKERY D. LEWIS, by his next friends; RICHARD
YOUNG; LYNN G. HAINER, Administratrix of the Estate of
ADDIE SMITH;
SUSAN W. COLEMAN; KATHY A. BURGER; TRACY
PALMER; KENNY ATKINSON, by his next friend;
BERNICE TATE, by her next friend;
MARY WAGNER; MICHAEL BIDZILYA, by his next
friend; WILLIAM ALGAR, by his next friend; ANTHONY
GALE, by his next friends;
THE ARC COMMUNITY TRUST OF PENNSYLVANIA;
THE FAMILY TRUST, on their own behalf and on behalf of
all other persons similarly situated

v.

GARY ALEXANDER, in official capacity as Secretary of
Department of Public Welfare of the Commonwealth of
Pennsylvania;
ERIC ROLLINS, in official capacity as Executive Director of
the Erie County Assistance Office,

Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court  No. 2-06-cv-03963
District Judge: The Honorable Jan E. Dubois

Argued March 26, 2012

Before: FUENTES, SMITH, and JORDAN, *Circuit Judges*

(Filed: June 20, 2012)


Stephen A. Feldman, Esq.                    (Argued)
Feldman & Feldman
820 Homestead Road
Jenkintown, PA  19046
        *Counsel for Appellee*

Jason W. Manne, Esq.                        (Argued)
Office of General Counsel
Department of Public Welfare
301 Fifth Avenue
Suite 430
Pittsburgh, PA  15222
        *Counsel for Appellant*

2

Shirley B. Whitenack, Esq.
Schenck, Price, Smith & King
220 Park Avenue
P.O. Box 991
Florham Park, NJ 07932
        *Counsel for Amicus Appellees*

_____

OPINION

_____

SMITH, *Circuit Judge,*

## I

This case involves the interaction between state and federal law under the Medicaid system, a cooperative program between the state and federal governments to provide medical assistance to those with limited financial resources. Seeking to stamp out abusive manipulation of trusts to hide assets and thereby manufacture Medicaid eligibility, Congress created a comprehensive system of rules mandating that trusts be counted as assets. But Congress also exempted from these rules certain trusts intended to provide disabled individuals with necessities and comforts not covered by Medicaid. Seeking to ensure that these trusts were not abused, Pennsylvania enacted Section 9 of Pennsylvania Act 42 of 2005, codified at 62 Pa. Stat. Ann. § 1414 (Section 1414), to regulate these special needs trusts.

3

Plaintiffs brought a putative class action in the Eastern District of Pennsylvania challenging Section 1414's validity. Plaintiffs allege Section 1414 is preempted by the federal statute governing Medicaid eligibility, 42 U.S.C. § 1396p(d)(4). They seek injunctive and declaratory relief barring its enforcement. The District Court granted that relief, holding all but one of the challenged provisions of Section 1414 preempted. In reaching that holding, the District Court concluded that Plaintiffs' case was justiciable and that Plaintiffs had a private right of action under both Section 1983 and the Supremacy Clause. The District Court also held that Section 1414 was severable, certified a class of plaintiffs, and appointed class counsel.

This appeal followed. The parties do not challenge the District Court's decision to uphold the remaining provision of Section 1414 or the District Court's decisions on severability, certification, and appointment of class counsel. We conclude that Plaintiffs' case is justiciable and that they have a private right of action under both Section 1983 and the Supremacy Clause of the Constitution. On the merits of Plaintiffs' challenge, we conclude that the District Court was correct in its determination that Section 1414's 50% repayment provision, "special needs" provision, expenditure provision, and age restriction are all preempted by federal law. However, we conclude that the enforcement provision of Section 1414 – when used to enforce provisions not otherwise preempted by federal law – is a reasonable exercise of the Commonwealth's retained authority to regulate trusts. We will affirm in part and reverse in part.

**II**

4

Medicaid is a joint federal-state program providing medical assistance to the needy.[1] Enacted under Congress' Spending Clause authority, Medicaid is voluntary. No State is obligated to join Medicaid, but if they do join, they are subject to federal regulations governing its administration. *See Roloff v. Sullivan*, 975 F.2d 333, 335 (7th Cir. 1992). Pennsylvania has elected to participate in Medicaid.

Generally, Medicaid provides assistance for two types of individuals: the categorically needy and the medically needy. The categorically needy are those who qualify for public assistance under the Supplemental Security Income (SSI) program or other federal programs. *See Roach v. Morse*, 440 F.3d 53, 59 (2d Cir. 2006) (Sotomayor, J.); *Roloff*, 975 F.2d at 335. The medically needy are those who would qualify as categorically needy (because they are disabled, etc.) but whose income and/or assets are substantial

---

[1] The Supreme Court has noted, echoing Judge Friendly, that Medicaid's "Byzantine construction . . . makes the Act 'almost unintelligible to the uninitiated.'" *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981) (quoting *Friedman v. Berger*, 547 F.2d 724, 727 n.7 (2d Cir. 1976)). The District Court in *Friedman*, which the Supreme Court quoted, was even more direct: "The Medicaid statute . . . is an aggravated assault on the English language, resistant to attempts to understand it." *Friedman v. Berger*, 409 F. Supp. 1225, 1225-26 (S.D.N.Y. 1976), *quoted by Schweiker*, 453 U.S. at 43 n.14.

enough to disqualify them.  *Roloff*, 975 F.2d at 335.[2]  Every State participating in Medicaid must provide assistance to the categorically needy.  States need not provide assistance to the medically needy.  *See id.*  If States choose to make medical assistance available to the medically needy, they are subject to various statutory restrictions in determining to whom medical assistance should be extended.

Congress has created a comprehensive system of asset-counting rules for determining who qualifies for Medicaid. Under Medicaid's original asset-counting rules, individuals could put large sums of money in trust, thereby vesting legal title to those assets in the trust and reducing (on paper) the amount of assets owned by the individual.

A trust is a legal instrument in which assets are held in the name of the trust and managed by a trustee for the benefit of a beneficiary.  *Black's Law Dictionary* 1546 (8th ed. 2004) (definition of "trust").  This structure means that the beneficiary does not actually own the assets of the trust, but

---

[2]  "[T]he medically needy may qualify for financial assistance for medical expenses if they incur such expenses in an amount that effectively reduces their income to the eligibility level. Only when they 'spend down' the amount by which their income exceeds that level, are they in roughly the same position as [the categorically needy]:  any further expenditures for medical expenses then would have to come from funds required for basic necessities."  *Atkins v. Rivera*, 477 U.S. 154, 158 (1986) (footnote and citation omitted).

instead has an equitable right to derive benefits from them. (The benefits vary according to the terms of the trust.) The trust has long been a tool for evading the rigid strictures of the law, which has generally been a positive development. For example, in feudal England – the trust's birthplace – the trust allowed younger sons and daughters to inherit land despite strict rules at law against devising land by will. *See* Joseph A. Rosenberg, *Supplemental Needs Trusts for People with Disabilities: The Development of a Private Trust in the Public Interest*, 10 B.U. Pub. Int. L.J. 91, 101 (2000) (citing Austin Wakeman Scott, Abridgment of the Law of Trusts 11 (1960)). And the trust's unique structure makes it useful for countless salutary purposes in modern society.

But this same bifurcated ownership structure has been used to manufacture eligibility for government welfare programs like Medicaid. As with many government programs, eligibility for Medicaid is partially dependent on the claimant's income and assets. Wealthy individuals are expected to exhaust their own resources before turning to the public for assistance. But trusts can enable these same individuals to technically "own" nothing at all, even though they may have access to substantial wealth. Such claimants may then qualify for Medicaid. *See Johnson v. Guhl*, 357 F.3d 403, 405 (3d. Cir. 2004) ("Because Medicaid is available to the needy, creative lawyers and financial planners have devised various ways to 'shield' wealthier claimants' assets in determining Medicaid eligibility."). Individuals have gained access to taxpayer-funded healthcare while retaining the benefit of their wealth and the ability to pass that wealth to their heirs.

7

Congress understandably viewed this as an abuse and began addressing the problem with statutory standards enacted in 1986. *See* Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, § 9506(a), 100 Stat. 82 (Apr. 7, 1986). These standards were repealed and replaced in 1993 by the current trust-counting rules. *See* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, Title XIII § 13611(d)(1)(c), 107 Stat. 312 (Aug. 10, 1993) (OBRA 1993). Those rules are at issue in this case.

In the 1993 OBRA amendments, Congress established a general rule that trusts would be counted as assets for the purpose of determining Medicaid eligibility. But Congress also excepted from that rule three types of trusts meeting certain specific requirements. Taken together, these are generally called "special needs trusts" or "supplemental needs trusts." "A supplemental needs trust is a discretionary trust established for the benefit of a person with a severe and chronic or persistent disability and is intended to provide for expenses that assistance programs such as Medicaid do not cover." *Sullivan v. Cnty. of Suffolk*, 174 F.3d 282, 284 (2d Cir. 1999) (internal quotation marks omitted). These expenses – books, television, Internet, travel, and even such necessities as clothing and toiletries – would rarely be considered extravagant.

One type of special needs trust – the one at issue in this case – is the pooled special needs trust. "A 'pooled trust' is a special arrangement with a non-profit organization that serves as trustee to manage assets belonging to many disabled individuals, with investments being pooled, but with separate trust 'accounts' being maintained for each disabled

8

individual." Jan P. Myskowski, *Special Needs Trusts in the Era of the Uniform Trust Code*, 46 N.H. Bar J., Spring 2005, at 16. The pooled special needs trust was intended for individuals with a relatively small amount of money. By pooling these small accounts for investment and management purposes, overhead and expenses are reduced and more money is available to the beneficiary.

The Medicaid statute says the following regarding pooled trusts:

> (4) This subsection [the rules counting trusts as available assets for purposes of Medicaid eligibility] shall not apply to any of the following trusts:
>
> . . . .
>
> > (C) A trust containing the assets of an individual who is disabled (as defined in section 1382c(a)(3) of this title) that meets the following conditions:
> >
> > > (i) The trust is established and managed by a non-profit association.
> > >
> > > (ii) A separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of

9

funds, the trust pools these accounts.

(iii) Accounts in the trust are established solely for the benefit of individuals who are disabled (as defined in section 1382c(a)(3) of this title) by the parent, grandparent, or legal guardian of such individuals, by such individuals, or by a court.

(iv) To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this subchapter.

42 U.S.C. § 1396p(d)(4).

In 2005, Pennsylvania sought to regulate pooled trusts (and special needs trusts more generally) by passing Section 1414, which states:

Section 1414.  Special Needs Trusts. –

(a) A special needs trust must be approved by a court of competent jurisdiction if required by rules of court.

(b) A special needs trust shall comply with all of the following:

> (1) The beneficiary shall be an individual under the age of sixty-five who is disabled, as that term is defined in Title XVI of the Social Security Act (49 Stat. 620, 42 U.S.C. § 1381 et seq.)

> (2) The beneficiary shall have special needs that will not be met without the trust.

> (3) The trust shall provide:

>> (i) That all distributions from the trust must be for the sole benefit of the beneficiary.

>> (ii) That any expenditure from the trust must have a reasonable relationship to the needs of the beneficiary.

>> (iii) That, upon the death of the beneficiary or upon the earlier termination of the trust, the department and any other state that provided medical assistance

11

to the beneficiary must be reimbursed from the funds remaining in the trust up to an amount equal to the total medical assistance paid on behalf of the beneficiary before any other claimant is paid: Provided, however, That in the case of an account in a pooled trust, the trust shall provide that no more than fifty percent of the amount remaining in the beneficiary's pooled trust account may be retained by the trust without any obligation to reimburse the department.

. . . .

(c) If at any time it appears that any of the requirements of subsection (b) are not satisfied or the trustee refuses without good cause to make payments from the trust for the special needs of the beneficiary and, provided that the department or any other public agency in this Commonwealth has a claim against trust property, the department or other public agency may petition the court for an order terminating the trust.

. . . .

12

(f) As used in this section, the following words and phrases shall have the following meanings:

. . . .

"Special needs" means those items, products or services not covered by the medical assistance program, insurance or other third-party liability source for which a beneficiary of a special needs trust or his parents are personally liable and that can be provided to the beneficiary to increase the beneficiary's quality of life and to assist in and are related to the treatment of the beneficiary's disability. The term may include medical expenses, dental expenses, recreational therapy, occupational therapy, physical therapy, vocational therapy, durable medical needs, prosthetic devices, special rehabilitative services or equipment, disability-related training, education, transportation and travel expenses, dietary needs and supplements, related insurance and other goods and services specified by the department.

62 Pa. Stat. Ann. § 1414.

Plaintiffs challenge Section 1414 as preempted by the Medicaid statute. Stripped down to its essentials, their argument is that the requirements for a pooled special needs trust are set forth at 42 U.S.C. § 1396p(d)(4), that those are the only requirements, and that Section 1414's attempt to graft additional requirements onto pooled special needs trusts

13

is not permissible.  The District Court agreed.  For the most part, we agree as well.  We part company with the District Court only insofar as we believe it gave insufficient weight to Pennsylvania's retained authority to regulate trusts.

### III

There are two types of named plaintiffs in this proposed class action:  the Individual Plaintiffs and the Trust Plaintiffs.[3]  The Individual Plaintiffs are Zackery Lewis, Richard Young, Lynn Hainer, Susan Coleman, Kathy Burger, Tracy Palmer, Kenny Atkinson, Bernice Tate, Mary Wagner, Michael Bidzilya, William Algar, and Anthony Gale.  With the exception of Lynn Hainer, all the Individual Plaintiffs are domiciled in the State of Pennsylvania, are disabled, and have received medical assistance under Medicaid.[4]  Lynn Hainer brings suit as administratix for the estate of her deceased niece Addie Smith.  At the time of her death, Addie was domiciled in Pennsylvania, disabled, and receiving medical

---

[3] The parties have stipulated to the facts.  The stipulation was filed with the District Court in advance of the motion for summary judgment.  We have seen nothing in the record to suggest that we lack jurisdiction or that the stipulation is obviously inaccurate in any other respect.  We accept it as true for the purposes of this appeal and have included relevant facts below.

[4] Kenny Atkinson and Bernice Tate passed away during the pendency of this suit.

14

assistance through Medicaid. The Individual Plaintiffs all have accounts in pooled trusts, with balances ranging from $0 (Richard Young)[5] to $1.26 million (Zackery Lewis).[6] In general, the Individual Plaintiffs' balances are quite low, usually a few hundred to a few thousand dollars. The Individual Plaintiffs use or intend to use the balances in their accounts for a variety of purposes, including personal items, furnishings, therapy sessions, cell phone and cable service, and travel expenses. With the exception of Michael Bidzilya and William Algar, who at the time of filing were 80 years old and 69 years old respectively, all the individual plaintiffs are under the age of 65. (At the time of her death, Addie Smith was 72 years old.)

The Trust Plaintiffs are ARC-CT (ARC) and The Family Trust. ARC is a charitable organization managing trust accounts, with approximately $23 million in funds under management. It currently manages approximately 117 pooled trust accounts. It has managed approximately 130 pooled trust accounts since its inception. All its trust beneficiaries

---

[5] Richard Young exhausted his account, but continues to be paid benefits from account funds retained by the trust after the deaths of the respective account beneficiaries. He appears to be the only Plaintiff with such an arrangement.

[6] The current balance in Lewis' account is not provided in the stipulation, but it is being funded with annuities purchased from the $1.26 million net proceeds of a settlement reached in a medical malpractice lawsuit.

are disabled, Medicaid-eligible individuals.  It does not open pooled trust accounts for beneficiaries over the age of 65.

Disabled individuals seeking to establish an account in ARC's pooled trust sign an agreement providing that the trustee has sole discretion in disbursing funds and will do so for the beneficiary's "supplemental and life enhancing needs and care."  The agreement further provides that the trustee "may interpret liberally the term 'supplemental needs' but all distributions shall be made solely for the benefit of the disabled beneficiary."  ARC has not approved the use of trust funds for luxury items and Pennsylvania has never informed ARC that any of its expenditures are unallowable.

Prior to enactment of Section 1414, ARC's agreements provided that all funds in trust would be retained by ARC upon the death of the beneficiary and would be used for the benefit of other beneficiaries.  In 2002, the Social Security Administration and the Pennsylvania Department of Public Welfare (DPW) informed ARC that its trust documents met the requirements of 42 U.S.C. § 1396p(d)(4)(C).  Following the enactment of Section 1414, DPW informed ARC that its trust agreements did not comply with the new Pennsylvania statute.  In response, ARC amended its trust agreements to provide that funds would be retained "to the maximum extent allowed by law."  Since enactment of Section 1414, ARC has retained the funds in the accounts of several deceased beneficiaries and paid some of those funds out for the benefit of other beneficiaries.  In 2006, Pennsylvania sought a portion of the funds retained by ARC following the death of Thomas Johnstone, but it has since withdrawn that request.

16

The Family Trust is a charitable organization managing trust accounts, with approximately $20 million in funds under management. It currently manages approximately 1,122 pooled trust accounts. It has managed approximately 1,248 pooled trust accounts since its inception. Unlike ARC, the Family Trust does open pooled trust accounts for beneficiaries over the age of 65, with fourteen individuals permitted to do so since the enactment of Section 1414. All of The Family Trust's beneficiaries are disabled, Medicaid-eligible individuals.

Disabled individuals seeking to establish an account in the pooled trust sign an agreement providing that the trustee has sole discretion in disbursing funds and will do so for the beneficiary's "extra and supplemental care." When the Family Trust inquired whether it was permitted to use funds in a beneficiary's account to pay for her funeral expenses, it was informed that it was not permitted to do so.

The Family Trust's agreements provide that all funds in trust are retained by The Family Trust upon the death of the beneficiary and used to provide "support for individuals with disabilities to live safe, meaningful and productive lives." The Family Trust has used retained funds for general charitable purposes, not solely for other beneficiaries of its trust accounts. In 2000, DPW informed The Family Trust that its trust documents met the requirements of 42 U.S.C. § 1396p(d)(4)(C).[7]

---

[7] While we intend to cast no aspersions on The Family Trust, its stewardship of funds has been questioned. For

17

Gary Alexander is the Secretary of the Pennsylvania Department of Public Welfare. The DPW is charged with administration of the State's Medicaid program. It is also responsible for reviewing special needs trusts and for promulgating "regulations or statements of policy . . . to implement" Section 1414. 62 Pa. Stat. Ann. § 1414(b)(4). The DPW operates county assistance offices throughout the Commonwealth to serve the citizens of Pennsylvania. Eric Rollins is the Executive Director of the Erie County Assistance Office. Both Mr. Alexander and Mr. Rollins are defendants in this suit, having been sued in their official capacities.

Following the enactment of Section 1414, DPW sought to terminate the medical assistance of Mary Wagner by asserting that assets she had transferred to the trust could not be exempted because The Family Trust's trust agreements did not comply with Section 1414. In addition, DPW has objected to Kenny Atkinson and Bernice Tate's participation in The Family Trust based upon The Family Trust's failure to conform its agreements to Section 1414. DPW has not

example, the Family Trust approved the use of trust funds for the purchase of a new home by the family of Zachery Lewis. Though the disbursement was in the amount calculated by the trust to provide for necessary safety features for the home, neither Zachery Lewis nor The Family Trust retained a security interest in the home. On the other hand, in a different case, The Family Trust refused to approve the use of funds to purchase a Jaguar automobile.

18

otherwise challenged the medical assistance eligibility of any individuals, terminated the medical assistance of any beneficiary, or attempted to block disbursements for failure to conform to Section 1414.  But DPW stipulates that should it "prevail in this litigation, it will enforce all provisions of section 1414[.]"  Also, DPW has "directed all pooled trusts in Pennsylvania to amend their master trust[] agreements and joinder agreements to conform to the requirements of section 1414."

DPW has not promulgated official regulations or issued formal guidance regarding its interpretation of Section 1414.  But it did create and circulate a document on Special Needs Trusts to DPW attorneys and County Assistance Offices.

**IV**

Plaintiffs brought a putative class action in the Eastern District of Pennsylvania before Judge Jan E. Dubois, challenging the validity of Section 1414 and seeking injunctive and declaratory relief barring its enforcement.  The original defendants included a host of state officials (including the Governor of Pennsylvania, Attorney General of Pennsylvania, and others) purportedly charged with enforcing Section 1414.  By opinion dated August 3, 2007, the District Court dismissed the claims against all individuals except the Secretary of the Pennsylvania Department of Public Welfare and the Executive Director of the Erie County Assistance Office.  It concluded that the Complaint adequately alleged that these two individuals had actually attempted to enforce Section 1414.  In the same opinion, the District Court

19

dismissed substantive and procedural due process claims made by the plaintiffs.[8]  None of these decisions appears to be challenged, except insofar as Defendants continue to challenge the justiciability of Plaintiffs' claims.

After discovery and submission of stipulated facts, cross-motions for summary judgment were filed by the parties.  In a thorough and carefully-considered opinion, the District Court granted Plaintiffs' motion for summary judgment almost in its entirety, holding that all but one of the challenged provisions of Section 1414 are preempted by federal law.[9]  However, the District Court concluded that the offending provisions could be severed from the remainder of the law, and thus did not strike down Section 1414 in its

---

[8] The District Court deferred consideration of one portion of the procedural due process claim until the summary judgment stage, at which point it concluded the claim was moot due to its determination that the challenged portions of Section 1414 were preempted.  Given our reversal of the District Court's judgment with regard to the enforcement clause, the District Court is free to revisit this ruling on remand.  We express no opinion on the merits of the claim.

[9] The District Court concluded that the requirement of Section 1414(b)(3)(i) that "all distributions from the trust must be for the sole benefit of the beneficiary" mirrored federal law and was not preempted.

entirety.  The District Court also certified a (b)(2) class action and appointed class counsel.

On appeal, Defendants challenge the justiciability of Plaintiffs' claims, their ability to bring a private right of action, and the District Court's judgment that Section 1414 is preempted by federal law.

## V.A.1

Constitutional standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Reduced to its constitutional minimum, standing requires three elements:  (1) an injury in fact consisting of an actual or imminent invasion of a legally protected interest; (2) a causal connection between the injury in fact and the Defendants' conduct; and (3) a likelihood that the injury will be redressed by a favorable decision.  *See id.* at 560-61.  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Id.* at 561.

Defendants' only challenge is to whether Plaintiffs have an injury in fact.[10]  Defendants note several provisions

_____

[10] Because constitutional standing is a jurisdictional requirement, "[w]e are obliged to examine standing *sua sponte* where standing has erroneously been assumed below."  *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001).  Thus, our examination is not confined to those arguments raised by the Defendants.  But the

of the law that they have allegedly never attempted to enforce. They particularly rely on arguments that: (1) they have never challenged trust disbursements under the expenditure provision of Section 1414(b)(3)(ii) ("any expenditure from the trust must have a reasonable relationship to the needs of the beneficiary"); and (2) they have never denied eligibility to form or maintain a trust based on the special needs provision of Section 1414(b)(2) ("The beneficiary shall have special needs that will not be met without the trust.") (Appellants' Principal Br. at 14)

Because the provisions of Section 1414 are severable,[11] we must analyze each provision independently for the purposes of determining whether the Plaintiffs have standing to challenge that particular provision. *See Contractors Ass'n of E. Pa., Inc. v. City of Phila.*, 6 F.3d 990,

---

District Court concluded – and we agree – that the causal connection and redressability prongs are satisfied because "[t]he injuries alleged by plaintiffs are a direct result of Section 1414 and its impending enforcement by defendants, and declaratory and injunctive relief would eliminate the risk of such injury."

[11] The District Court did a comprehensive severability analysis and concluded that the statute is severable. The parties have not contested severability before us. We adopt the analysis of the District Court and conclude that the statute is severable.

996 (3d Cir. 1993).  But should we conclude that even one of the Plaintiffs has an injury regarding a specific provision of Section 1414, we need not examine the effect of that provision on the other Plaintiffs.  *See Montalvo-Huertas v. Rivera-Cruz*, 885 F.2d 971, 976 (1st Cir. 1989) ("Where coplaintiffs have a shared stake in the litigation – close identity of interests and a joint objective – the finding that one has standing to sue renders it superfluous to adjudicate the other plaintiffs' standing.").

Defendants deny Plaintiffs have an injury in fact as regards the expenditure and special needs provisions.[12]  So we must determine whether any of the Plaintiffs have been subject to actual enforcement of the expenditure or special needs provisions or are likely to have these provisions

---

[12] Though injury in fact is not disputed as to the other provisions, we note that it appears from the record that there are Plaintiffs with standing to challenge those provisions.  Michael Bidzilya and William Algar can challenge the under-65 provision because they are over 65 years old.  Mary Wagner can challenge the 50% repayment provision because the State sought repayment from her and has only suspended its collection attempt pending the outcome of this suit.  All plaintiffs can challenge the termination provision, as that is an enforcement clause applicable to any potential violations of Section 1414.  We therefore confirm our jurisdiction to consider challenges to those provisions.

23

enforced against them in the near future. We conclude that Plaintiffs are indeed likely to have these provisions imminently enforced against them. First, all Plaintiffs fall within the scope of these statutory provisions, such that Plaintiffs would be burdened by these provisions if they were enforced. Second, DPW has stated that it intends to enforce all the requirements of the statute should it prevail. This establishes an imminent injury in fact.

Defendants believe that Plaintiffs lack an injury in fact as to the special needs provision because they "have not produced a single class member who can plausibly claim to be at risk of being denied access to a pooled trust under" that provision. (Appellants' Principal Br. at 14) Defendants point to cases where they have approved exceptionally large trusts,[13] implicitly arguing that they will not enforce the "special needs" requirement except in egregious cases. They believe Plaintiffs lack an injury in fact unless one of the Plaintiffs *presents* such an egregious case. Similarly, because Plaintiffs have failed to point to a specific expenditure that Defendants have disapproved or threatened to disapprove, Plaintiffs supposedly lack an injury in fact as to the expenditure provision.

But Defendants' position ignores the nature of these provisions. Instead of being imposed on particular classes of

---

[13] We note, though, that the Defendants do not commit themselves to continuing such a course. Faced with an identical situation in the future, they could disallow such trusts.

24

individuals, these requirements are burdens on the *nature of the trust itself*, affecting all beneficiaries and trustees of special needs trusts. With regard to the special needs provision, the Pennsylvania statute requires that the trust's existence be justified in relation to the "special needs" of the beneficiary. It defines "special needs" as "items, products or services . . . related to the treatment of the beneficiary's disability." 62 Pa. Stat. Ann. § 1414(f). This requires that the trust be justified in relation to the treatment of the beneficiary's disability. Similarly, the expenditure provision requires "any expenditure from the trust" to "have a reasonable relationship to the needs of the beneficiary." 62 Pa. Stat. Ann. § 1414(b)(3)(ii). All special needs trusts are subject to these requirements. Each of these provisions requires careful scrutiny of the trust, the beneficiary, and the beneficiary's ongoing needs, and therefore each provision imposes an ongoing burden on beneficiaries and trustees.

Plaintiffs are within the scope of the statute and therefore potentially affected by it. By itself, this is not sufficient to demonstrate constitutional standing. Normally, Plaintiffs would have the burden of demonstrating that there is an imminent threat of enforcement against them. But here DPW has relieved Plaintiffs of that burden by stipulating that should it "prevail in this litigation, it will enforce all provisions of section 1414[.]" Therefore, the threat of enforcement is sufficiently imminent that Plaintiffs have an injury in fact.

Defendants also argue that should they prevail, they will not seek to terminate trusts, but rather seek to force their compliance with Section 1414. (Appellants' Principal Br. at

25

15) But it is unclear why this would deny Plaintiffs an injury in fact. While terminating non-compliant trusts would surely be *more* draconian, forcing such trusts to comply with an allegedly illegitimate statute is, from the perspective of constitutional standing, no less an injury in fact.

We hold that Plaintiffs have constitutional standing to challenge Section 1414.

## V.A.2

Prudential standing requires: (1) that a litigant assert his or her own legal interests rather than those of a third party; (2) that the grievance not be so abstract as to amount to a generalized grievance; (3) and that the Plaintiffs' interests are arguably within the "zone of interests" protected by the statute, rule, or constitutional provision on which the claim is based. *See Mariana v. Fisher*, 338 F.3d 189, 205 (3d Cir. 2003).[14] These requirements are clearly met in this case.

---

[14] Defendants do not challenge Plaintiffs' prudential standing. Constitutional standing is clearly jurisdictional and must be considered even when the parties fail to raise the issue. It is unclear whether prudential standing is similar. There is significant disagreement among our sister circuits on whether objections to prudential standing can be waived. *Compare Cmty. First Bank v. Nat'l Credit Union Admin.*, 41 F.3d 1050, 1053 (6th Cir. 1994) (not waivable); *Animal Legal Defense Fund, Inc. v. Espy*, 29 F.3d 720, 723 n.2 (D.C. Cir. 1994) (not

Plaintiffs are asserting their own interests as beneficiaries and trustees of trusts the Commonwealth of Pennsylvania is attempting to regulate. Their grievance is not so abstract as to amount to a generalized grievance. Rather, it is clear, distinct, and particular to their status as beneficiaries and trustees. Finally, the "zone of interests" analysis parallels our later consideration of whether Plaintiffs have a private right of action. Under *Gonzaga University v. Doe*, 536 U.S. 273 (2002), to determine whether Congress intended to create a private right of action, we must look for "rights-creating language" clearly imparting an "individual entitlement," with "an unmistakable focus on the benefitted class." *Id.* at 287. This test is both narrower than the zone-of-interests test and fully encompassed within its boundaries. Thus, should we conclude that Plaintiffs have a private right of action, we must

waivable); *and Thompson v. Cnty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) (not waivable) *with Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417-18 (5th Cir. 2012) (waivable); *The Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 n.1 (10th Cir. 2011) (waivable); *RK Co. v. See*, 622 F.3d 846, 851-52 (7th Cir. 2010) (waivable); *City of L.A. v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (waivable). We have previously acknowledged the divide in our sister circuits, *see UPS Worldwide Forwarding, Inc. v. USPS*, 66 F.3d 621, 626 n.6 (3d Cir. 1995), but we have thus far not decided the issue. Because we hold that Plaintiffs have satisfied the requirements for prudential standing, we similarly decline to decide the issue now.

27

necessarily conclude that they satisfy the zone-of-interests test. Since our later analysis does conclude that Plaintiffs have a private right of action, Plaintiffs have satisfied the zone-of-interests test. We therefore hold that Plaintiffs have prudential standing to challenge Section 1414.

### V.A.3

Ripeness requires "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

In *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990), we concluded that the most important factors in determining whether a case is ripe are "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment." *Id.* at 647. Adversity requires opposing legal interests. *See id.* at 648 (citing and quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2757, at 582-83 (2d ed. 1983)). Such opposing interests are clearly present here, as Defendants have an obligation to enforce Section 1414, and Plaintiffs seek to evade its strictures. Conclusivity depends on the ability of a decision to "define and clarify the legal rights or relations of the parties." *Id.* at 648. A decision here would establish whether the statute can be enforced against the Plaintiffs, so it would define and clarify Plaintiffs' legal rights. And declaratory judgments have utility because the clarity they bring enables "plaintiffs (and possibly defendants) [to] make responsible decisions

28

about the future." *Id.* at 649. Here, a declaratory judgment will enable the Plaintiffs to make informed decisions about the administration of their trusts with a full understanding of Section 1414's effects.

Defendants argue that Plaintiffs' claims are not ripe, but do not clearly state which factors they believe are lacking. They argue that because Section 1414 requires compliance with authoritative interpretations of the statute, because DPW is the agency charged with such interpretation, and because DPW has not released any such interpretations, the case is not ripe for decision. They are incorrect.

First, the statutory text has its own freestanding meaning and imposes requirements on trusts even without agency interpretation. Defendants point to no authority requiring us to wait for an authoritative interpretation from a state agency before determining whether a state statute conflicts with federal law. And to the extent the agency is pleading for a chance to interpret the statute more leniently than the statute's text might suggest, we question whether we can credit such an interpretation. As the Supreme Court said in *United States v. Stevens*, 130 S. Ct. 1577, 1591 (2010): "We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."

Second, the stipulated facts cite multiple attempts to enforce provisions of the statute. In one enforcement attempt, DPW denied Mary Wagner medical assistance because the trust agreement for The Family Trust did not comply with Section 1414. Defendants claim this "ineligibility decision was withdrawn," (Appellants' Reply Br. at 4) but that

29

explanation is at best incomplete, and at worst misleading, particularly coming as it does in a reply brief. In fact, Mary Wagner, the trustee, and DPW entered into what is essentially a stay of the ineligibility determination pending resolution of this suit. Should Plaintiffs' challenge fail, Mary Wagner and the trustee have agreed that the Commonwealth will be paid "up to fifty (50%) percent of remaining funds in Mary Wagner's pooled account at her death[.]" Obviously, Mary Wagner's interests remain adverse to those of the Commonwealth.

Finally, the stipulated facts indicate that DPW has created and internally circulated a document addressing various provisions of the statute. Defendants argue that these guidelines have not been used to disapprove any accounts or expenditures, but that is beside the point. The document undermines Defendants' argument that they have not reached any conclusions on the scope and meaning of the statute. For example, they have concluded that "luxury items" cannot be bought with trust funds and that "[n]o assets can be added after age 65."

The issues raised by Defendants will often be present in declaratory judgment cases. Such actions are often brought specifically because legal rights and obligations are ambiguous or undefined. Plaintiffs seek to clarify those legal rights and obligations. We understand that DPW has been entrusted by the Pennsylvania Legislature with the duty of interpreting Section 1414 and we appreciate DPW's stated intent to interpret the statute reasonably. But Plaintiffs have satisfied *Step-Saver*'s requirements. They are entitled to have Section 1414 examined in light of federal law and to have

their legal rights and obligations clarified. We hold that Plaintiffs' claims are ripe for adjudication.

## V.B

Defendants' central argument, cutting across both the private-right-of-action and the merits sections of their brief, is that 42 U.S.C. § 1396p(d)(4) does not *mandate* that the States exempt special needs trusts meeting its criteria. Defendants' argument has been embraced by both the Second and Tenth Circuits. *See Wong v. Doar*, 571 F.3d 247 (2d Cir. 2009); *Keith v. Rizzuto*, 212 F.3d 1190 (10th Cir. 2000). Meanwhile, the Eighth Circuit suggests in a passing reference that § 1396p(d)(4) is mandatory. *See Norwest Bank of N.D., N.A. v. Doth*, 159 F.3d 328, 330 (8th Cir. 1998). Having given careful consideration to Defendants' arguments and to the positions of our sister circuits, we conclude that 42 U.S.C. § 1396p(d)(4) imposes mandatory obligations upon the States.

Defendants' key point is that the beginning of the special needs exemption states: "*This subsection* shall not apply to any of the following trusts[.]" 42 U.S.C. § 1396p(d)(4) (emphasis added). This language refers to the portion of the Medicaid statute requiring States to count trusts against eligibility. It abrogates that section insofar as it applies to special needs trusts. Both parties agree that this lifts the obligation levied upon the States by the trust-counting provisions and says that the States do not have to apply the trust-counting provisions to qualifying special needs trusts. But the provision does not specifically say that "Any

31

trusts meeting these requirements shall not be counted as available assets for determining Medicaid eligibility."

Defendants argue that this creates a "gap" where the States can legislate. This was the Second Circuit's position in *Wong v. Doar*, 571 F.3d at 256-57 ("Congress's negative command that (d)(3) 'shall not apply' to the trusts referenced in (d)(4) does not, however, provide any guidance as to what rules *shall* apply to (d)(4) trusts."). Similarly, in *Keith v. Rizzuto*, the Tenth Circuit concluded that "Section 1396p(d)(4) . . . provides an exception to a requirement. States accordingly need not count income trusts for eligibility purposes, but nevertheless may . . . opt to do so." 212 F.3d at 1193; *see also Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1179-80 (10th Cir. 2009) (applying *Keith* to conclude that 42 U.S.C. § 1396p(d)(4)(A) does not confer a private right of action).

"[T]he intent of Congress is the 'ultimate touchstone' of preemption analysis." *Farina v. Nokia, Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). And because "the best evidence of Congress's intent is what it says in the texts of the statutes," *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 569 (3d Cir. 2002), we give controlling weight to the statutory text. But we believe that focusing solely on the words "[t]his subsection" has caused Defendants and several courts to miss the forest for the trees.

In enacting the trust provisions of OBRA 1993, Congress provided a comprehensive system for dealing with the relationship between trusts and Medicaid eligibility. After

32

limited success with the Medicaid Qualifying Trusts provisions enacted in 1986, Congress made a deliberate choice to expand the federal role in defining trusts and their effect on Medicaid eligibility. Evidence of this can be found throughout the Medicaid statute. For example, the current text of 42 U.S.C. § 1396a(a)(18) requires States to comply with "section 1396p of this title with respect to . . . treatment of certain trusts[.]" Before OBRA 1993, the provision instructed States to "comply with the provisions of section 1396p of this title with respect to liens, adjustments and recoveries of medical assistance correctly paid, and transfers of assets[.]" 42 U.S.C. § 1396a(a)(18) (1992). It did not mention compliance with 1396p.

Congress made a specific choice to expand the types of assets being treated as trusts and to unambiguously require States to count trusts against Medicaid eligibility. Its primary objective was unquestionably to prevent Medicaid recipients from receiving taxpayer-funded health care while they sheltered their own assets for their benefit and the benefit of their heirs. But its secondary objective was to shield special needs trusts from impacting Medicaid eligibility. And the Supreme Court has emphasized the importance of giving full effect to all of Congress' statutory objectives, as well as the specific balance struck among them. *See Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) ("Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice-and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law.").

33

Congress' intent was not merely to shelter special needs trusts from the effect of 42 U.S.C. § 1396p(d)(3). It was to shelter special needs trusts from having any impact on Medicaid eligibility. This conclusion is rooted in the statutory text. If Congress had intended to do as the Defendants insist – provide an exception to the trust-counting rules through which the States were free to do as they wish – it seems unlikely that Congress would use the word "shall" in its command that "[t]his subsection shall not apply." Any number of constructions would have been more amenable to the Defendants' position. For example, Congress could have said: "States are not required to apply this subsection to any of the following trusts." Congress is not required to use any particular magic words, but its choice of an imperative like "shall" does give evidence of its intent.

Even more important is the structure of the asset-counting rules. While Defendants focus on the specific mandate-and-exception structure of 42 U.S.C. §§ 1396p(d)(3) and (4), both of these sit within a complex and comprehensive system of asset-counting rules. Congress rigorously dictates what assets shall count and what assets shall not count toward Medicaid eligibility. State law obviously plays a role in determining ownership, property rights, and similar matters. Here Congress has not only provided a comprehensive system of asset-counting rules, it has *actually legislated on this precise class of asset*. Defendants argue that Congress left a gap or an unprovided-for case with regard to these trusts. But with such a rigorous system, it seems clear that Congress intended to create a purely binary system of classification: either a trust affects Medicaid eligibility or it does not.

34

Finally, while this shades into our preemption analysis, it is important to note that 42 U.S.C. § 1396p(d)(4) basically provides a federal definition for what constitutes a special needs trust. Through this statutory provision, Congress has set the boundaries for what will be considered a special needs trust under federal law. Pennsylvania's Section 1414 adds requirements to this definition. As our preemption analysis will demonstrate, States are not free to rewrite congressional statutes in this way.

For these reasons, rooted in the text and structure of the Medicaid statute, we respectfully disagree with the conclusion of the Second and Tenth Circuits. We hold that in determining Medicaid eligibility, States are required to exempt any trust meeting the provisions of 42 U.S.C. § 1396p(d)(4).[15]

## V.C.1

To find a private right of action under Section 1983: (1) the statutory provision must benefit the plaintiffs with a right unambiguously conferred by Congress; (2) the right cannot be so "vague and amorphous" that its enforcement would strain judicial competence; and (3) the statute must impose a binding obligation on the States. *See Blessing v. Freestone*, 520 U.S. 329, 329 (1997); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 282 (2002). Defendants challenge the first and

---

[15] Trusts are, of course, required to abide by a State's general law of trusts, the effects of which will be discussed in greater detail in our preemption analysis.

third parts of this test. We conclude that Plaintiffs have a private right of action under Section 1983.

Medicaid provides eligible individuals with the statutory right to receive medical assistance and to receive it with reasonable promptness. *See* 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(10) & 1396d(a). Our Court has already concluded that Medicaid provides a private right of action under Section 1983 for interference with this right. *See Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 189 (3d Cir. 2004). Plaintiffs have a right to receive reasonably prompt medical assistance so long as they meet the eligibility requirements as those requirements are defined by federal law. Plaintiffs allege that Section 1414 changes the eligibility requirements for medical assistance, contrary to federal law. Thus, it interferes with Plaintiffs' right to receive medical assistance. Plaintiffs therefore have a cause of action under Section 1983.

It is a closer question whether the Trust Plaintiffs have a private right of action here. To be sure, they do not have a right to receive medical assistance. We nonetheless conclude that the Medicaid statute confers a private right of action upon the Trust Plaintiffs.

Under *Gonzaga University v. Doe*, we must look for "rights-creating language" clearly imparting an "individual entitlement," with "an unmistakable focus on the benefitted class." 536 U.S. at 287. In *Gonzaga*, the Supreme Court contrasted the "individually focused terminology of Title VI ('No person . . . shall . . . be subjected to discrimination')" with FERPA's mandate that the Secretary of Education

36

withhold funds from institutions violating its provisions. *Id.* at 287.

Based on *Gonzaga*, at least two provisions of the Medicaid statute confer rights upon the trusts. First, 42 U.S.C. § 1396p(d)(4) says that the trust-counting rules "shall not apply to" special needs trusts. This parallels the language from Title VI and Title IX ("No person . . . shall . . . be subjected to discrimination") that the Court has held to create individual rights. *See Gonzaga*, 536 U.S. at 284, 287. Second, 42 U.S.C. § 1396a(a)(18) instructs that "[a] State plan for medical assistance must . . . comply with the provisions of section 1396p of this title with respect to . . . treatment of certain trusts[.]" This parallels the language from 42 U.S.C. § 1396a(a)(8)[16] already held by *Sabree* to confer an individual right. In fact, they are both part of a list of requirements that Congress concluded "must" be met by a "State plan for medical assistance[.]" While the instruction to comply is directed at the State, the right to have the State comply is directed at those affected by noncompliance. *See Sabree*, 367 F.3d at 190. In the case of Section 1396a(a)(8), individual rights were conferred upon those eligible for Medicaid. In the case of Section 1396a(a)(18), individual rights are conferred upon the trusts.

---

[16] "A State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals[.]" 42 U.S.C. § 1396a(a)(8).

Defendants' counterargument is that the special needs exemptions to the trust-counting rules (42 U.S.C. § 1396p(d)(4)) are not mandatory. In order to confer a private right of action, the statute "must be couched in mandatory, rather than precatory, terms." *Blessing*, 520 U.S. at 341. Otherwise it does not "unambiguously impose a binding obligation on the States" such that plaintiffs can seek its enforcement through Section 1983. Because we have already concluded that the special needs exemptions are mandatory, we must reject this argument.

We hold, consistent with our opinion in *Sabree*, that the Individual Plaintiffs have a private right of action to enforce the application of the special needs exemptions. We further hold that 42 U.S.C. § 1396p(d)(4) and 42 U.S.C. § 1396a(a)(18) unmistakably confer a similar right on the Trust Plaintiffs.

## V.C.2

We also conclude that the Supremacy Clause provides Plaintiffs with an independent basis for a private right of action in this case.[17] Supreme Court precedent establishes

---

[17] The District Court concluded that this issue could not be bypassed – despite finding a private cause of action under Section 1983 – because Plaintiffs supposedly challenge a specific use of the 50% payback provision solely under the Supremacy Clause. While that may be

that the Supremacy Clause creates an independent right of action where a party alleges preemption of state law by federal law.  *See Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.").  We acknowledged as much in *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. V.I.*, 218 F.3d 232, 240 (3d Cir. 2000) ("[A] state or territorial law can be unenforceable as preempted by federal law even when the federal law secures no individual substantive rights for the party arguing preemption. . . . The Supreme Court has recognized that such a challenge presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.").[18]

Our opinion in *Gonzalez v. Young*, 560 F.2d 160, 166 (3d Cir. 1977), is not to the contrary.  There we concluded that 28 U.S.C. § 1343 did not confer jurisdiction over a claim

an overly narrow construction of the Complaint, the Supremacy Clause does provide a cause of action.

[18] It is worth noting, though, that our statement in *St. Thomas-St. John* is only dicta, because the Supremacy Clause has no direct role in a conflict between federal law and territorial law.  Such a conflict presents no competition between state and federal sovereignty.

that the federal welfare program preempted New Jersey law. But here Section 1331 provides federal question jurisdiction so long as there is a "civil action[] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.[19] In any event, *Shaw* post-dates *Gonzalez* and commands that jurisdiction and a cause of action are present here.

We are compelled to hold that the Supremacy Clause provides a private right of action here.[20]

---

[19] Section 1331 could not be used in *Gonzalez* as the version in effect at the time had an amount-in-controversy requirement of $10,000. *See Gonzalez*, 560 F.2d at 164. That requirement was removed in 1980. Federal Question Jurisdictional Amendments Act of 1980, Pub. L. No. 96-486, 94 Stat. 2369 (Dec. 1, 1980).

[20] When this case was briefed, the Supreme Court was poised to revisit this issue in *Douglas v. Independent Living Center of Southern California*, 565 U.S. __, No. 09-958, 2012 WL 555204 (Feb. 22, 2012). But though the question on which the Court granted certiorari squarely presented the issue, the Court expressly declined to "address whether the Ninth Circuit properly recognized a Supremacy Clause action to enforce this federal statute[.]" *Id.* at *6. Instead, the Court remanded for consideration of agency determinations issued during the pendency of the appeal. *See id.* at *2. The Court

**V.D**

Our preemption analysis must necessarily examine each individual component of the Pennsylvania statute to determine whether it conflicts with the Medicaid statute. But we begin by determining whether Congress had an overarching intent in enacting the trust-counting provisions and the special needs exemptions.

The basic principles of a preemption analysis are familiar. First, "the intent of Congress is the 'ultimate touchstone' of preemption analysis." *Farina*, 625 F.3d at 115 (quoting *Medtronic*, 518 U.S. at 485). Second, "we 'start[] with the basic assumption that Congress did not intend to displace state law.'" *Id.* at 116 (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). Third, when we are dealing with Spending Clause legislation, we require Congress to speak "unambiguously," because such legislation is in the nature of a contract between Congress and the States,

---

reached this decision over the strong dissent of the Chief Justice, joined by Justices Scalia, Thomas, and Alito. The dissenting justices would have concluded that "[w]hen Congress did not intend to provide a private right of action to enforce a statute enacted under the Spending Clause, the Supremacy Clause does not supply one of its own force." *Id.* at *11 (Roberts, C.J., dissenting). Although the Supreme Court is free to revisit *Shaw* if it so desires, we are not. *Shaw* is binding precedent unless and until it is abrogated by the Supreme Court.

41

and the States are entitled to know the conditions under which they are accepting. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).

Bearing these principles in mind, we discern an overarching intent behind the trust exemptions. First, Congress intended to mandate the exemption of special needs trusts from the trust-counting rules. We explained our reasoning for this conclusion in Section V.B.

Second, Congress intended that special needs trusts be defined by a specific set of criteria that it set forth and no others. We base this upon Congress' choice to provide a list of requirements to be met by special needs trusts. The venerable canon of statutory construction – *expressio unius est exclusio alterius* – essentially says that where a specific list is set forth, it is presumed that items not on the list have been excluded. *See, e.g.*, *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 793 n.9 (1995) (noting that application of *expressio unius* leads to the conclusion that the qualifications for office expressed in the Constitution are the sole requirements and other requirements cannot be imposed); *Waggoner v. Gonzales*, 488 F.3d 632, 636 (5th Cir. 2007) (applying *expressio unius* to a list of requirements and concluding that expression of the "extreme hardship" requirement forecloses conclusion that additional requirements exist beyond "extreme hardship"). Absent an explicit statement or a clear implication that States are free to expand the list, *expressio unius* leads us to conclude they are not.

42

Third and finally, while Congress did not intend to allow additional burdens targeted specifically at special needs trusts, there is no reason to believe it abrogated States' general laws of trusts or their inherent powers under those laws. There is necessarily some tension between this conclusion and the bar on States adding requirements. For example, even application of the trustee's traditional duty of loyalty – to "administer the trust solely in the interests of the beneficiaries[,]" 20 Pa. Cons. Stat. Ann. § 7772(a) – could be considered an extra requirement. But we reject the conclusion that application of these traditional powers is contrary to the will of Congress. After all, Congress did not pass a federal body of trust law, estate law, or property law when enacting Medicaid. It relied and continues to rely on state laws governing such issues.

These three conclusions – that the special needs exemptions are mandatory, that Congress' stated requirements for special needs trusts are exclusive, and that States retain their traditional regulatory authority – guide our preemption analysis here.[21]

---

[21] We note briefly that we see no reason for application of the "no more restrictive" rule (NMR rule) in this case. The NMR rule bars States – in determining whether the medically needy are eligible for Medicaid – from using a methodology that is "more restrictive than the methodology which would be employed under the supplemental security income program." 42 U.S.C. § 1396a(a)(10)(C)(i)(III). While the NMR rule was

43

**V.D.1**

Pennsylvania's 50% retention provision provides:

[U]pon the death of the beneficiary or upon the earlier termination of the trust, the department and any other state that provided medical assistance to the beneficiary must be reimbursed from the funds remaining in the trust up to an

---

heavily relied upon by the District Court and its application has been extensively briefed, using the NMR rule without consideration of Congress' underlying intent is like using a yardstick without knowing where to start measuring. Regardless, the more direct approach is to apply Medicaid standards in resolving this case. As the Supreme Court has recognized, the Medicaid statute requires the States to base assessments of financial need (for both categorically needy and medically needy individuals) on resources "available" to the recipient. *Schweiker v. Gray Panthers*, 453 U.S. 34, 37 (1981). The trust provisions are deliberately worded to require that States consider money held in trust "available" unless the trust is protected by one of the exemptions. 42 U.S.C. § 1396p(d)(3). (Use of Medicaid standards instead of SSI standards may be a distinction without a difference. The SSI standards incorporate by reference the Medicaid trust exemptions. *See* 42 U.S.C. § 1382b(e)(5). But given the complexity of Medicaid, we seek to simplify the analysis in any way we can.)

44

amount equal to the total medical assistance paid on behalf of the beneficiary before any other claimant is paid: Provided, however, That in the case of an account in a pooled trust, the trust shall provide that no more than fifty percent of the amount remaining in the beneficiary's pooled trust account may be retained by the trust without any obligation to reimburse the department.

62 Pa. Stat. Ann. § 1414(b)(3)(iii). The Medicaid statute, meanwhile, includes the following language:

> To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this subchapter.

42 U.S.C. § 1396p(d)(4)(C)(iv). These two provisions are irreconcilable. We conclude that Congress intended to permit special needs trusts – at the discretion of the trust – to retain up to 100% of the residual after the death of the disabled beneficiary. We therefore hold the repayment provision of Section 1414 preempted by federal law.[22]

---

[22] Defendants argue that there is a particular justiciability problem with the 50% repayment provision, as the

45

Plaintiffs argue that the Medicaid provision leaves it to the trust to decide how much – if any – money should be provided to the State to reimburse it for Medicaid expenses. We agree. This construction accords with the statutory text and Congress' evident solicitude for these pooled trusts (evident by the fact that there is a special category of exemption for them.) Retaining the residual enables the trust to cover administrative fees and other overhead without increasing charges on accounts of living beneficiaries At the same time, should the trust attempt to pass the money to the deceased's estate, this provision acts as a safeguard to ensure

Individual Plaintiffs supposedly have no interest in where the remainder goes after they die (as they have forfeited to the trust their right to the remainder) and Trust Plaintiffs do not have a "personal right" in the pooled trusts. (Appellants' Principal Br. at 26. n.7) We disagree. The injury to the Individual Plaintiffs does not arise from the disposition of property after their death. Rather, it arises from imposing additional requirements on their existing trust. If, for example, DPW reviews the trust agreement of an Individual Plaintiff and determines that the agreement is invalid for lack of a provision for repaying the State, DPW calls into question the validity of the Individual Plaintiff's trust and, by extension, their eligibility for medical assistance. This is an injury in fact sufficient to confer standing upon the Individual Plaintiffs. And for the reasons discussed above, we believe the relevant provisions of the Medicaid statute grant a private right of action to the Trust Plaintiffs.

that the State gets repaid. *See* Joseph A. Rosenberg, *Supplemental Needs Trusts for People with Disabilities: The Development of a Private Trust in the Public Interest*, 10 B.U. Pub. Int. L.J. 91, 132 (2000) ("To the extent the remaining balance in an individual trust account is retained by the pooled trust after the death of the beneficiary, the State is not entitled to be paid back. However, any amounts that are not retained by the pooled trust must be used to reimburse the State for the cost of medical assistance provided to the beneficiary during his or her lifetime.").

Defendants have not offered any reasonable alternative construction of the Medicaid provision. Their principal argument is that the Medicaid statute makes no mention of who gets to decide the percentage retained by the trust. But Plaintiffs' construction of the statute – which we find persuasive, particularly in the absence of a contrary construction from the Defendants – is that this is a protective provision, intended to shield the trust from repayment obligations. Permitting the States to choose how much the trust can retain would eviscerate that protection. While Pennsylvania seeks "only" 50% of the trust residual, States would be free to demand any amount they wished, with the possible exception of 100%, and the courts would be powerless to mediate these disputes. Absent some statutory guidance, there is no reasonable way for us to say that demanding 75%, 85%, or even 99.9% of the residual is any less permissible than demanding 50%. We cannot believe Congress would intentionally cripple its statute in that manner.

47

It is particularly noteworthy that this provision differs from the other three types of special needs trusts. In enacting the trust-counting rules, Congress designated three types of exempted trusts in successive statutory paragraphs at 42 U.S.C. §§ 1396p(d)(4)(A), (B), and (C). Both the first and second exemptions, 42 U.S.C. § 1396p(d)(4)(A) and (B), require repayment up to the total amount expended for medical assistance. The pooled-trust provision, 42 U.S.C. § 1396p(d)(4)(C), is the only one of the three exemptions that qualifies this repayment obligation and permits the trust to retain some portion of the residual. This is strong evidence of congressional intent. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

There is no question that Congress could have chosen to strike the balance differently, determining that the trust could retain some portion of the residual while partially repaying the State. But Congress chose to strike the balance in favor of the trust. It is important to remember that the residual here is not being passed to the deceased beneficiary's estate. It is being retained by a charitable organization whose purpose is to operate special needs trusts for the benefit of the disabled. *See* 42 U.S.C. § 1396p(d)(4)(C)(I) (requiring that a pooled trust be "established and managed by a non-profit association"). To the extent any part of the residual *is* passed to the estate, States are free to seek repayment from those funds. But Congress has given the trust discretion to

48

determine whether to retain the residual. We hold the repayment provision of Section 1414 preempted by federal law.

## V.D.2

The expenditure provision of Section 1414(b)(3)(ii) provides that "any expenditure from the trust must have a reasonable relationship to the needs of the beneficiary." 62 Pa. Stat. Ann. § 1414(b)(3)(ii). The Medicaid statute sets no restrictions on the purposes for which trust funds can be expended. Thus, the reasonable relationship requirement of Section 1414(b)(3)(ii) transgresses congressional intent. We hold it preempted by federal law.

The Commonwealth is justifiably concerned with the potential for fraud and abuse. While there is little if any evidence to demonstrate that the Trust Plaintiffs here have spent trust funds recklessly, it is always possible that trustees could do so. But States are not without tools to prevent abuse. The trust-counting rules are built atop the States' legal framework for trusts. Special needs trusts are therefore subject to supervision by the courts and legal actions to enforce trustees' fiduciary duties. And because pooled special needs trusts must be managed by non-profit organizations, they are similarly subject to the States' legal rules for non-profits. We trust that these statutory tools are robust enough to curtail abuses. But should States find these tools inadequate, they are free to petition Congress to change the Medicaid statute. Should Congress be unresponsive, States retain the option of withdrawing from Medicaid.

49

## V.D.3

The special needs requirement of Section 1414(b)(2) attempts to restrict pooled special needs trusts to beneficiaries with "special needs that will not be met without the trust." 62 Pa. Stat. Ann. § 1414(b)(2). The Pennsylvania statute defines "special needs" as "those items, products or services not covered by the medical assistance program, insurance or other third-party liability source for which a beneficiary of a special needs trust or his parents are personally liable and that can be provided to the beneficiary to increase the beneficiary's quality of life and to assist in and are related to the treatment of the beneficiary's disability."[23] These limitations do not appear in the Medicaid statute, which only requires that individuals be "disabled."[24]

---

[23] The statute also provides examples: "The term may include medical expenses, dental expenses, nursing and custodial care, psychiatric / psychological services, recreational therapy, occupational therapy, physical therapy, vocational therapy, durable medical needs, prosthetic devices, special rehabilitative services or equipment, disability-related training, education, transportation and travel expenses, dietary needs and supplements, related insurance and other goods and services specified by the department." 62 Pa. Stat. Ann. § 1414(f).

[24] The definition of "disabled" for this purpose is given at 42 U.S.C. § 1382c(a)(3)(A): "[A]n individual shall be

Defendants point to the flexibility of the term "quality of life" as support for their contention that this provision is not inconsistent with Medicaid's requirements. Plaintiffs rightly note that the Pennsylvania statute requires both that the items will enhance the beneficiary's quality of life *and* that they be "related to the treatment of the beneficiary's disability." Congress did not include any requirement that proceeds from a special needs trust be used solely for treatment of the beneficiary's disability. Starting from the assumption that Congress intended to exempt all legally constituted trusts meeting the requirements of 42 U.S.C. § 1396p(d)(4) from counting against Medicaid eligibility, and did not intend to permit additional restrictions beyond those it specified, the special needs requirement of Section 1414(b)(2) transgresses congressional intent. We hold it preempted by federal law.

Defendants claim that this requirement, much like the "reasonable relationship" requirement, is needed to prevent abuse of the trusts and the purchase of luxury items. But

---

considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Additional provisions provide that disability requires consideration of all jobs for which an individual might be eligible and relax the definition of "disabled" for minors. 42 U.S.C. § 1382c(a)(3)(B) & (C).

51

while preventing abuse is a laudable goal and one with which Congress may agree, that requirement is not reflected in the Medicaid statute. And of course States retain their full complement of general trust and non-profit laws to combat waste, fraud, and abuse. Should a State find these tools inadequate, it may petition Congress for statutory changes, or it may withdraw from Medicaid entirely.

## V.D.4

The age provision of Section 1414(b)(1) attempts to restrict pooled special needs trusts to beneficiaries "under the age of sixty-five." 62 Pa. Stat. Ann. § 1414(b)(1). Congress did not include an age restriction for pooled special needs trusts. On that basis alone, the age restriction in Section 1414(b)(1) transgresses congressional intent.

Our conclusion is bolstered by a close examination of the other trust exemptions (for non-pooled trusts). In enacting the trust-counting rules, Congress designated three types of exempted trusts in successive statutory paragraphs at 42 U.S.C. §§ 1396p(d)(4)(A), (B), and (C). Only the first exemption, 42 U.S.C. § 1396p(d)(4)(A), is restricted to "an individual under age 65[.]" The other two exemptions – including pooled special needs trusts at 42 U.S.C. § 1396p(d)(4)(C) – contain no similar language. This is strong evidence of congressional intent not to impose an age restriction on pooled special needs trusts. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in

the disparate inclusion or exclusion."). And, indeed, Defendants conceded at oral argument that if we held 42 U.S.C. § 1396p(d)(4) to be mandatory and binding, the age restriction must fall. We agree, and hold the provision preempted.

We note here that Defendants were attempting to protect elderly beneficiaries of special needs trusts from potentially invalidating (at least temporarily) their Medicaid eligibility. Through a quirk of the Medicaid statute, elderly individuals (65 and over) transferring assets into a pooled trust are made ineligible for Medicaid for a period of time. *See* Rosenberg, *supra*, 10 B.U. Pub. Int. L.J. at 134-35 & n.234 (discussing operation of the penalty). Before the District Court, Defendants argued that this was a "drafting error" by Congress. They may well be correct.[25] But this is not a mere "scrivener's error" that we can correct judicially. Congress could have rationally concluded that the benefits of making special needs trusts available to elderly individuals outweighed the burden of the penalty. As it stands, congressional intent – as exemplified by the text of the statute – is clear. The Commonwealth's goal may be laudable, but if Congress perceives a problem, Congress will have to fix it.

---

[25] Professor Rosenberg's article notes that advocates who lobbied Congress for the trust exceptions have expressed their belief that the lack of an age restriction was a "technical drafting error, created when the provision was divided into separate sections to accommodate the retention of the remainder by the pooled trust." Rosenberg, *supra*, 10 B.U. Pub. Int. L.J. at 129.

**V.D.5**

The enforcement provision of Section 1414(c) states: "If at any time it appears that any of the requirements of subsection (b) are not satisfied or the trustee refuses without good cause to make payments from the trust for the special needs of the beneficiary and, provided that the department or any other public agency in this Commonwealth has a claim against trust property, the department or other public agency may petition the court for an order terminating the trust." 62 Pa. Stat. Ann. § 1414(c). The District Court held this provision preempted, but we believe it is a reasonable exercise of the Commonwealth's retained authority to regulate trusts. We therefore hold that the enforcement provision is not preempted by federal law.

The pooled special needs trust is a unique type of trust. It is one legal entity, but with many separate beneficiaries, each having a claim over a specific "account" within the trust. It is entirely reasonable for the Commonwealth to seek a method of enforcement tailored to this legal entity. Assume, for example, that the non-profit trustee has a dozen accounts within the trust. Eleven of those twelve accounts it manages well. But for one of those accounts, it breaches the sole benefit requirement and makes distributions of account funds to relatives and friends of the disabled beneficiary, or – even worse – to its own employees. It is the nonprofit that is at fault, and the nonprofit that can no longer be trusted to manage *any* of the accounts. It is entirely reasonable for the Commonwealth to seek cancellation of the entire trust.

Pennsylvania's general trust law contains numerous provisions for protecting the trust and the interests of its beneficiaries. For example, Pennsylvania law imposes duties of loyalty, impartiality, prudent administration, and prudent investment. *See* 20 Pa. Cons. Stat. Ann. §§ 7772, 7773, 7774, 7203. These duties may be enforced by a court when the court's jurisdiction is "invoked by an interested person or as provided by law" and the proceeding may "relate to any matter involving the trust's administration." 20 Pa. Cons. Stat. Ann. § 7711. The court's authority includes the power to remedy breaches of trust, remove the trustee, or terminate the trust. *See* 20 Pa. Cons. Stat. Ann. §§ 7781, 7766, 7740.2. Should the beneficiary be incapable of protecting his or her own interests, the Commonwealth may ask a court to appoint a guardian capable of bringing actions on the beneficiary's behalf. *See* 20 Pa. Cons. Stat. Ann. § 5511.

Because pooled trusts are required to be managed by non-profit organizations, *see* 42 U.S.C. § 1396p(d)(4)(C)(i), Pennsylvania is also free to employ its general laws regarding nonprofits. Among other things, these laws regulate the formation of non-profit corporations, *see* 15 Pa. Cons. Stat. Ann. §§ 5301-5311; they set forth the powers and duties of non-profit corporations, *see* 15 Pa. Cons. Stat. Ann. §§ 5501-5589; and they hold directors to a duty of care, *see* 15 Pa. Cons. Stat. Ann. § 5712.

Obviously, Pennsylvania cannot use the enforcement provision of Section 1414 to terminate trusts for violating other provisions we hold to be preempted. But we see no reason why it cannot use this section to enforce its general trust laws or provisions like the sole benefit requirement.

55

In briefing and at oral argument, Defendants have expressed an intent not to cancel entire trusts because of a single account's transgressions. We agree that innocent beneficiaries should not be punished for the transgressions of their trustee or their fellow account holders. We appreciate Defendants' intent to apply this provision reasonably, and we trust that they will do so. Should any individual enforcement action infringe on the rights of a trust or a disabled beneficiary, those individuals remain free to bring an as-applied challenge to the statute. But we cannot hold the enforcement provision categorically preempted, and we therefore vacate that portion of the District Court's opinion.

## V.D.6

The District Court addressed a number of other issues in its opinion. It concluded that the surviving portions of Section 1414 were severable and could stand on their own. It granted Plaintiffs' request for class certification, but narrowed the class on the basis of its conclusion that no Plaintiff adequately represented individuals with trusts created prior to 2000, when the SSI and Medicaid standards for trust treatment were different. It concluded that The Family Trust could not adequately represent the class. Finally, it appointed class counsel. None of these decisions are challenged by the parties. We affirm them in all respects.

## VI

We conclude that Plaintiffs' case is justiciable and they have a private right of action under both Section 1983 and the Supremacy Clause of the Constitution. On the merits

56

of Plaintiffs' challenge, we conclude that the District Court was correct in its determination that Section 1414's 50% repayment provision, "special needs" provision, expenditure provision, and age restriction are all preempted by federal law. However, we conclude that the enforcement provision of Section 1414 – when used to enforce provisions not otherwise preempted by federal law – is a reasonable exercise of the Commonwealth's retained authority to regulate trusts. We will affirm in part, reverse in part, and remand for proceedings consistent with this opinion.